No. 86-107

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

RALPH STEVER,

        Defendant and Appellant.

---

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable R.D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    David W. Harman argued, Libby, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Clay R. Smith, Asst. Atty. General; Edward M. Dobson
        argued, Legal Intern, Helena, Montana
        William A. Douglas argued, Lincoln County Attorney,
        Libby, Montana

---

Submitted:   January 22, 1987

Decided:   February 13, 1987

Filed: FEB 13 1987

_Ethel M. Harrison_
Clerk

Mr. Justice William E. Hunt, Sr. delivered the Opinion of the Court.

This is an appeal of a criminal conviction arising from the Nineteenth Judicial District, in and for Lincoln County, Montana. Defendant was convicted of the felonious sale of dangerous drugs and now appeals. We affirm.

On appeal, defendant raises two issues. The first is whether the District Court erred by allowing Paddy Calabrese to testify about statements made by John Loomis implicating defendant as the drug supplier. The second issue is whether the District Court erred in its circumstantial evidence jury instruction.

This case began with an undercover narcotics investigation conducted in Lincoln County, Montana, in 1983. County Attorney William Douglas hired Paddy Calabrese, a private investigator from Spokane, Washington, to undertake this investigation.

From the inception of the operation, the prime targets of this investigation were John and Debbie Loomis, a married couple living in or near Libby, Montana. Calabrese accordingly contacted the Loomises, pretending to be a real estate developer from Seattle. This relationship soon blossomed to the point that Calabrese made a series of minor narcotics purchases from the Loomises.

Calabrese then entered into an agreement with John Loomis for Loomis to sell Calabrese two kilograms of cocaine for $58,000 per kilo. During the course of these negotiations, Calabrese came to believe that the cocaine would be supplied by the defendant, Ralph Stever.

The sale of the first kilo was scheduled for August 5, 1983. Prior to this purchase, Lincoln County Sheriff's Deputies gave Calabrese money for the purchase. The officers

had recorded the serial numbers of the bills, but had not marked them with any tracing element.

According to his testimony at trial, Calabrese arrived at the Loomis residence with the purchase money at approximately 8:30 on the night of August 5. He showed Loomis the purchase money in his briefcase and a brief discussion followed. Approximately twenty minutes after Calabrese's arrival, Loomis left his residence in a vehicle, for a place unknown to Calabrese, to pick up the cocaine. After approximately another twenty minutes, Loomis returned and informed Calabrese that the price had increased to $62,500 per kilo, and that half of that price was due in advance. Calabrese gave Loomis $30,000 and Loomis again left.

Loomis returned in approximately twenty-five minutes and offered Calabrese two bags containing cocaine. Calabrese accepted the bags and paid Loomis the balance of $32,500. Calabrese then left the Loomis residence and signalled the Sheriff's deputies. Again, during the sale, Calabrese came to conclude that Stever supplied the cocaine.

Upon their arrest of Loomis, the Sheriff's deputies discovered that he did not have in his possession all of the initial $30,000 advance money given him by Calabrese. When asked the location of the missing money, Loomis named several possible locations where it might be found. The first of these locations which the deputies checked was the residence of one Tom Hileman.

Approximately fifteen minutes after their arrival at the Hileman residence, the police discovered Stever hiding in the bushes at the side of the house and promptly placed him under arrest. Officer Neil Bauer later testified at trial that when he questioned Stever subsequent to his arrest, Stever attempted to strike a bargain for his freedom in

return for disclosing the location of the missing purchase money. Stever denied making these comments.

Roughly three hours after Stever's arrest, a deputy searching the area found the missing money hidden beneath some boards in the back yard of the Hileman residence. Police also later found in a wood stove within the Hileman residence a paper bag similar to the one into which Loomis had placed the missing money.

At trial, the State introduced other evidence in its attempt to establish that Loomis received the cocaine from Stever. Jerry Johnston testified that he (Johnston) was living in the Hileman residence at that time and returned to the house around 9:00 p.m. on August 5. When he arrived, Johnston saw John Loomis on the front porch of the house talking with Stever.

Johnston further testified that Loomis remained at the Hileman residence for roughly ten to twenty minutes and then departed for fifteen to twenty minutes. Johnston stated that Loomis returned, again conversed with Stever--this time for five or ten minutes--and then departed. While he was able to hear Loomis and Stever talking, Johnston stated that he could not tell what they were talking about.

The State argued that Johnston's testimony fully corroborated the time sequence of Calabrese's testimony. The round trip driving time between the Loomis and Hileman residences according to the testimony is approximately seven and one-half minutes. At trial, Stever was found guilty of sale of dangerous drugs.

The first issue we must decide is whether the District Court erred by allowing Calabrese to testify about statements made by John Loomis implicating Stever as the drug supplier.

4

I

In its prosecution of the defendant the State relied heavily upon the testimony of Calabrese, who related several statements made to him by John Loomis which implicated the defendant as the cocaine supplier. Under the terms of an earlier plea bargain agreement, the State had agreed not to call Loomis to testify at Stever's trial. Because of that agreement, the State had to introduce Loomis's incriminating testimony through Calabrese, over the objection of the defendant that the use of such testimony violated both the hearsay rule and the Confrontation Clause.

A. The Challenged Testimony.

Calabrese testified at trial that Loomis implicated the defendant in several statements throughout the course of their dealings. The first two statements were allegedly made on July 20, 1983, when Calabrese and Loomis were stopped south of Libby by road construction and the defendant was in the car immediately in front of them. Loomis first said to Calabrese:

> Stay right here. I'm getting out of the car. That's our elbow man, my toot [cocaine] man's right here in front of us.

Loomis then rode with defendant for a while as Calabrese followed. After Loomis returned to Calabrese's car, Calabrese testified that:

> Mr. Loomis said to me that he just got confirmation from Ralph that he could get as much cocaine as we wanted to purchase and he referred to him - "he's like Jesus Christ."

The remaining statements were allegedly uttered on August 5, 1983, the date of the sale:

Mr. Loomis stated to me that the price was $62,500.00 for a kilo and I asked him, I think we had a conversation the next day that the kilo would be going down in price and he stated to me he would need $30,000.00 up front and he would bring a kilo back. Because that's the way Ralph wanted to do the deal.

When John Loomis gave me the kilo, he turned around and said a couple of ounces were missing out of it and he would have it replaced with the other kilo through Ralph tomorrow.

Q. How often was Ralph's name mentioned by Mr. Loomis in these conversations?

A. Probably the last day it was mentioned more than any other day. I think three times the last day.

Q. And, was it made clear to you by Mr. Loomis as to who was the supplier of this cocaine - who he was going to be?

A. Yes it was.

Q. And, who was that person?

A. Ralph Stever.

The first issue is whether these statements were properly admitted.

B. The Hearsay Rule.

A review of the record reveals that the District Court, without explaining its decision, admitted this testimony under the coconspirator exemption to the hearsay rule. This exemption, Rule 801(d)(2)(E), states:

A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

6

This Court has not previously had occasion to address the elements necessary to establish the applicability of this rule to an alleged coconspirator's statements. We now choose to adopt guidelines for this issue. We note initially that this provision is identical to that found in the Federal Rules of Evidence, and federal decisional authority is instructive. See Snell v. Montana-Dakota Utilities Co. (1982), 198 Mont. 56, 62, 643 P.2d 841, 844 (when a state statute is closely modeled after a federal provision, "reference to federal case law is appropriate and useful"). We look to federal case law, however, solely for analytical purposes.

Before a coconspirator's statement may be admitted pursuant to Rule 801(d)(2)(E), the State is required to establish a proper foundation, showing that the requisite elements of this rule have been satisfied. Specifically, we require that the State show (1) that a conspiracy exists, (2) membership of the declarant coconspirator and the defendant in such conspiracy, and (3) that the declaration was uttered in the course of and in furtherance of the conspiracy. See e.g., United States v. Wamochil (8th Cir. 1985), 778 F.2d 1311, 1314; United States v. Perez (9th Cir. 1981), 658 F.2d 654, 658.

The District Court, pursuant to Rule 104, M.R.Evid., is required to determine whether the requirements of Rule 801(d)(2)(E) have been met. In reaching this determination, we now require that before such testimony be admitted, the District Court find that a conspiracy exist by a preponderance of the independent evidence. Stated differently, we require that the State show the existence of the conspiracy by a preponderance of the evidence independent and exclusive of the coconspirator's statement itself.

While we note that the order of proof is typically within the discretion of the trial judge, we further require

7

that the District Court make this admissibility determination prior to the introduction of the alleged coconspirator's statement.

On appeal, defendant essentially challenges only the District Court's ability to find the existence of a conspiracy. Our review of the record, however, persuades us that the State presented sufficient evidence to satisfy this requirement. There exists sufficient evidence, independent of Loomis's alleged statements, to find by a preponderance of the evidence that a conspiracy existed.

The existence of a conspiracy can be shown by circumstantial evidence. State v. Fitzpatrick (1977), 174 Mont. 174, 184, 569 P.2d 383, 391. To establish a conspiracy it is not necessary to prove by direct evidence an agreement to commit a crime. Fitzpatrick, 569 P.2d at 391; State v. Alton (1961), 139 Mont. 479, 504, 365 P.2d 527, 539.

In this case, the State presented Calabrese's testimony relating Loomis's two trips taken on the night of the sale to pick up the cocaine. This testimony, read in conjunction with the observations of Jerry Johnston at the Hileman residence, provides strong circumstantial proof supporting the State's argument.

Further, the State presented the defendant's arrest while hiding in the bushes alongside the Hileman residence and the later discovery of the drug transaction money in Hileman's back yard. While these two events are not necessarily related, their relationship can be confirmed by the testimony of Officer Bauer who stated that the defendant offered to show Bauer the location of the money in exchange for the defendant's release.

We acknowledge that of these two factors offered by the State to prove the existence of this conspiracy, each, if considered alone, might be insufficient to satisfy the preponderance burden. Considered together, however, we find

8

that the District Court could have found the existence of a conspiracy under this standard. We therefore hold that the District Court did not err in admitting this challenged testimony under Rule 801(d)(2)(E).

C. Confrontation Clause.

Defendant further asserts that admission of the challenged testimony violated his right of confrontation guaranteed by Article II, § 24 of the Montana Constitution and the Sixth Amendment of the United States Constitution held applicable to the states through the Fourteenth Amendment in Pointer v. Texas (1965), 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923.

Defendant initially argued that the right of confrontation is an absolute right and that no out-of-court statements may by admitted unless the declarant is available to testify at trial. Contrary to defendant's summary of the law, the right of confrontation has never been held to be an absolute right. For example, it has long been accepted that a defendant cannot complain of the absence of a witness when the defendant has prevented the witness from attending the trial. See Reynolds v. United States (1878), 98 U.S. 145, 158-60, 25 L.Ed. 244. More recently, courts have recognized that extrajudicial statements of declarants who cannot be produced for trial are admissible as long as the defendant's confrontation rights are substantially protected, typically in one of two ways--either the evidence is of a type deemed to be inherently reliable or the defendant has had a prior opportunity to challenge the declarant's testimony. See e.g., Ohio v. Roberts (1980), 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597; Dutton v. Evans (1970), 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213, (plurality opinion); California v. Green (1970), 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489; Pointer

v. Texas, supra; Mattox v. United States (1895), 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409. The determinative question under this issue becomes whether the challenged statements are so inherently reliable as to protect defendant's confrontation rights.

The United States Supreme Court, in Ohio v. Roberts, supra, addressed the question of whether out-of-court statements were sufficiently reliable so as to satisfy the right of confrontation. At issue in Roberts was a Confrontation Clause objection to the admissibility under a state hearsay exception of an absent declarant's preliminary hearing testimony. The Court adopted two requirements necessary to satisfy the Confrontation Clause. First, the prosecution is required to demonstrate the unavailability of the declarant, and second, the prosecution must show that the declarant's out-of-court statements bear "adequate 'indicia of reliability.'" The Court added that "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." Roberts, 448 U.S. at 65-66. (Emphasis added; footnote omitted.)

The Supreme Court, however, in United States v. Inadi (1986), ____ U.S. ____, 106 S.Ct. 1121, 89 L.Ed.2d 390, held that the Confrontation Clause does not require a showing of unavailability as a condition to admission of the out-of-court statements of a non-testifying coconspirator. We, of course, are not bound by Inadi, as we may interpret our state constitution to guarantee greater rights than those guaranteed by the federal constitution. In this case, however, we adopt the reasoning of Inadi. To hold otherwise and require the State to show unavailability would impose a significant burden upon the workaday world of the criminal justice system. Not only would imposition of such a rule add

10

another avenue of appellate review in these cases, an unavailability rule would further place a considerable practical burden upon the State. <u>Inadi</u>, ___ U.S. at ___, 106 S.Ct. at 1128. To satisfy a Confrontation Clause challenge, we therefore hold that the State need not demonstrate the declarant's unavailability before an out-of-court statement made by a non-testifying coconspirator be admitted.

We cannot dismiss this point, however, before expressing, in the clearest possible terms, our strong disfavor of the prosecution's possible practice of rendering a material witness unavailable though a plea bargain and then attempting to introduce his testimony through an evidentiary exception. We cannot discern if that happened in this case for the record is unclear whether the State's plea bargain rendered Loomis unavailable only for the State or effectively denied defendant as well an opportunity to question Loomis. Defense counsel could have resolved this uncertainty by attempting to call Loomis to the stand, but chose not to do so. We caution prosecutors, however, that any use of this practice will be judged very critically.

As to the issue of the reliability of the challenged statements, the State asks us to adopt the Supreme Court's language in <u>Roberts</u>, and presume reliability where challenged statements fall within a "firmly rooted hearsay exception." We refuse to do so in this case. Coconspirator statements do not fall within a hearsay exception, but rather, a hearsay exemption. The rationale for admitting evidence under the rules covering hearsay exceptions differs from the rationale used to admit coconspirator statements. Evidence falling within the hearsay exceptions is admissible because of its perceived special trustworthiness. However, Rule 801(d)(2) treats coconspirator statements as a category of party admissions. It does so because of the legal fiction that each coconspirator is an agent of the others and that the

11

statements of one can therefore be attributed to all. Admissions are admitted not because of confidence in their inherent reliability but because a party will not be heard to object that he is unworthy of credence. As stated by the Advisory Committee of the Federal Rules of Evidence:

> Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule . . . <u>No guarantee of trustworthiness is required in the case of an admission.</u> (Emphasis added.)

Fed.R.Evid. 801(d)(2) Notes of Advisory Committee on Proposed Rules.

We therefore hold that satisfaction of the requirements of Rule 801(d)(2)(E) does not ipso facto satisfy the right of confrontation. Rather we require a separate confrontation clause analysis designed to guarantee the reliability of the challenged coconspirator statements.

For this analysis we turn to the Confrontation Clause test adopted by this Court in <u>Fitzpatrick</u>, 569 P.2d at 392. The relevant criteria to be considered are (1) the declarant's knowledge of the identity and role of the defendant in the crime; (2) the possibility that declarant was relying upon faulty recollection; and (3) the circumstances under which the statements were made, possibly indicating that the declarant might be lying about the defendant's involvement in the conspiracy.

The other two factors listed in <u>Fitzpatrick</u> are inapplicable. The fourth factor -- the possibility defendant could have shown by cross-examination the unreliability of declarant's statement -- has been effectively vitiated by our adoption of the <u>Inadi</u> holding. The fifth factor -- whether the testimony is so crucial to the prosecution or devastating

12

to the defense -- is inapplicable in this case. It was a significant consideration in Fitzpatrick only because it related to the jury's ability to follow the cautionary instruction that one defendant's confession could not be used as evidence of a codefendant's guilt. In clear contrast, the entire purpose of Rule 801(d)(2)(E) is to allow coconspirator declarations to be used as substantive evidence of a defendant's criminal culpability.

Applying that standard to the facts of this case, we find that (1) Loomis clearly had personal knowledge of the defendant and any role defendant had in the crime; (2) there is little chance that Loomis relied upon faulty recollection given the contemporaneousness of the statements and his close association with defendant; and (3) Loomis had little reason to misrepresent defendant's criminal status at the time the statements were made.

We therefore find no violation of defendant's right of confrontation and accordingly hold that the District Court did not err in admitting the challenged testimony.


II

We now consider issue two: whether the District Court erred in its circumstantial evidence jury instruction. Citing State v. Sheriff (1980), 188 Mont. 26, 610 P.2d 1157, defendant offered his proposed instruction stating that the jury must acquit the defendant if the circumstantial evidence gives rise to any reasonable interpretation which supports the defendant's innocence. The instruction proposed by the State, and given by the court, however, allowed the jury to find guilt even if defendant's theory of the case is reasonably supported by the circumstantial evidence.

We fail to find any error in this issue. Even were we to accept defendant's statement of the law, his proposed instruction is warranted only where the case of the State

13

rests substantially or entirely upon circumstantial evidence. Here, the State had introduced Officer Bauer's direct evidence of defendant's statement connecting him with the money. Second, the State introduced the direct evidence of Loomis's statements, admissible, as we have shown, under Rule 801(d)(2)(E). Once admitted, they could be used to prove the truth of the matter asserted. Defendant was not entitled to his proffered instruction, given the direct evidence in this case.

Affirmed.

_William E. Hunt_
Justice

We concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_Frank B. Morrison_

_John C. Sheehy_

_L. C. Gulbrandson_

_Fred J. Weber_
Justices

14