No. 89-164

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

TIMOTHY ERNEST KRUM,

        Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell Fillner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Allen Beck, Billings, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Kathy Seeley, Asst. Atty. General, Helena
        Harold Hanser, County Attorney; Charles Bradley, Deputy
        County Attorney, Billings, Montana

Submitted on Briefs: July 13, 1989

Decided: August 10, 1989

Filed:

_____
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Krum appeals his January 4, 1989, conviction following a two-day trial by jury in the Thirteenth Judicial District for criminal possession of a dangerous drug in violation of section 45-9-102(1), MCA. Krum was sentenced on February 7, 1989, to five years in the Montana State Prison. This sentence was scheduled to run consecutively to the prison term currently being served by Krum on another offense.

Krum asserts on appeal that there was insufficient evidence in the record to sustain his conviction. We disagree and herein affirm Krum's conviction for criminal possession of a dangerous drug.

Krum was charged by information on July 19, 1988, for violation of section 45-9-102(1), MCA. Jury trial was held January 3 and 4, 1989. Prior to trial, a stipulation was entered into between the State and the defendant. The stipulation was read by the court to the jury at the opening of the State's case.

The following facts were contained in the stipulation: Krum's arrest on July 12, 1988, was lawful. At the time of his arrest, two pill bottles were taken from his backpack. The two bottles contained 173 yellow caplets (State's Exhibit #1). One bottle originally contained Dilaudid and the prescription for that was issued in the name of Bill Davis, Krum's stepfather. The prescription label was affixed to that bottle. The pills were analyzed by the state crime lab, and it was determined that the caplets in Exhibit #1 contained Talwin NX, a Schedule IV controlled substance which contains pentazocine, a Schedule IV analgesic (pain killer). See section 50-32-229, MCA. The chain of possession of both bottles and their contents had not been disturbed and there is no evidence of tampering.

At trial, Krum testified that he found two bottles of pills in a park located six blocks from his stepfather's house. He testified that he read the label which was affixed to one bottle and believed the contents to be Dilaudid. He put the bottles in his backpack and had them there for two or three days prior to his arrest. He was in possession of them at the time of his arrest.

Krum further testified that the bottle to which was affixed the prescription label made out to his stepfather was not one of the two bottles he found in the park and put in his backpack. Krum asserted that someone had switched the bottles and assumed the switch was made by law enforcement personnel. When questioned about his theory regarding the "switch," Krum said law enforcement personnel could have gone to his stepfather's house, rang the front doorbell, and asked for a bottle of Davis' prescription pain killers. Krum denied on cross-examination that he took the pills from his stepfather's house while Krum was living there.

The State's evidence consisted of the stipulation, the bottles and the pills. On appeal, Krum asserts that there is insufficient State's evidence to sustain a conviction because he did not "know" the contents of the bottles to be a controlled substance; rather, he believed he was in possession of Dilaudid. We do not agree.

Felony criminal possession of a dangerous drug requires proof that a defendant: (1) possessed (2) dangerous drugs. State v. Smith (1983), 203 Mont. 346, 661 P.2d 463. "Possession" is defined as:

> [t]he knowing control of anything for a suffi-
> cient time to be able to terminate control.

Section 45-2-101(52), MCA. Thus, the mental state of "knowingly" is also contained in the definition of possession of dangerous drugs. Section 45-9-102(1), MCA. "Knowingly" is defined as follows:

3

> "Knowingly"--a person acts knowingly with respect to conduct or a circumstance described by a statute defining an offense when he is aware of his conduct or that the circumstance exists . . . when knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence . . .

Section 45-2-101(33), MCA.

Additionally, a mental state may be inferred from the acts of the accused and the facts and circumstances connected with the offense. Section 45-2-103, MCA. The court instructed the jury in Instruction Nos. 4 and 7 that the State had to prove that Krum "purposely" possessed Talwin. The result was that the State had to prove that Krum both purposely and knowingly was in control of a dangerous drug. As noted in the elements set forth above, the State is only obligated to prove "knowing" control of the dangerous drug. However in this case, the State carried its burden of proof on the instruction of "purposely" as well. No prejudice to Krum can be found in the erroneous placement of this additional burden on the State.

The standard of review applied to this case is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the three essential elements of the crime charged (violation of section 45-9-102(1), MCA) beyond a reasonable doubt. If so, then there is sufficient evidence to support the verdict. Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; State v. McDonald (Mont. 1987), 734 P.2d 1216, 44 St.Rep. 593. We conclude that a rational trier could find all elements satisfied and thus, for the reasons set forth below, there was sufficient evidence to support the verdict.

a.   Knowledge.

4

Krum hinges his defense on what he asserts is his lack of knowledge. That argument is without merit. Although knowledge cannot be inferred from mere possession alone, knowledge may be proved by evidence of acts, declarations or conduct of the accused from which an inference of knowledge may be drawn. State v. Anderson (1972), 159 Mont. 344, 351, 498 P.2d 295, 299. With that in mind, we examine Krum's conduct and declarations.

Krum was carrying the two bottles of pills when he was arrested. He stated he believed them to be a prescription of Dilaudid which he found in the park. Although he testified that he examined the pills and believed them to be Dilaudid, the record reflects that each yellow pill was marked with the letter "T" on one side. Further, Krum testified that part of the prescription label was torn from the bottle, but the part that remained showed that the prescription was issued in the name of "Billy D." Yet, Krum stated these pills he "found" could not have belonged to his stepfather, Bill Davis.

When questioned as to whether he had taken the pills with his stepfather's name on them while he had been living in his step-father's home, Krum responded that "someone" must have switched the pill bottles on him.

Krum's testimony regarding where he had obtained the two bottles of controlled substances and how his stepfather's prescription bottle got in his backpack was incredible. This raised an inference allowing the jury to disbelieve Krum. Viewing this in the light most favorable to the State, there is sufficient evidence to prove "knowledge" beyond a reasonable doubt. The remaining elements are not as easily contested.

b. Control.

Krum was exercising exclusive control of the two pill bottles and their contents when he placed them into his backpack. He kept

5

them in his backpack for two or three days. That time is certainly of a sufficient length wherein Krum could have terminated control. However, Krum did not terminate his control over the contents of the two bottles, and they were still in his backpack when he was arrested.

It is hard to dispute control when Krum was carrying the pills around for two or three days. At one point on cross-examination, Krum was asked why he did not throw the drugs away if he had found them. Krum answered, "I more or less forgot they were in there . . . " That testimony is still insufficient to dispute that Krum had control of the pills for a sufficient time to terminate control.

The State proved this element beyond a reasonable doubt.

c. Dangerous Drug.

The results of the state crime lab analysis of the contents of the pill bottles revealed them to be Talwin, NX, a prescription drug containing pentazocine. The defendant stipulated to the result and to the accuracy of the results.

A dangerous drug, as defined by section 50-32-101, MCA, means any substance or immediate precursor delineated in Schedules I-V in the statutes. In section 50-32-229, MCA, the Schedule IV controlled substances are listed. At section 50-32-229(5)(a), pentazocine is specifically listed by name as a dangerous drug. Little more can be said regarding this element, especially since the defendant stipulated to the results of the crime lab analysis.

Based on the foregoing analysis, we conclude there was sufficient evidence to support the jury's verdict. Krum's conviction for violation of section 45-9-102(1), MCA, and the sentence imposed thereon are hereby affirmed.

_____
Chief Justice

6

We concur:

_____

William E. Hunter

_____

_____

Justices