No. 89-400

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

           Plaintiff and Respondent,

  -vs-

DAVID GREGORY GOMMENGINGER,

           Defendant and Appellant.

APPEAL FROM:  District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert Keller, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Stephen J. Nardi; Sherlock & Nardi, Kalispell, Montana

      For Respondent:

          Hon. Marc Racicot, Attorney General, Helena, Montana
Patricia Schaeffer, Asst. Atty. General, Helena
Scott B. Spencer, County Attorney, Libby, Montana

Submitted on Briefs: Jan. 25, 1990

Decided: Mar. 29, 1990

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Defendant David G. Gommenginger appeals the judgment of the Nineteenth Judicial District, Lincoln County, Montana, convicting him of three counts of criminal sale of dangerous drugs in violation of § 45-9-101, MCA. We reverse and remand the case for a new trial.

The Defendant raises the following issues on appeal:

(1) Did the District Court err in admitting evidence allegedly regarding the Defendant's character in the State's case-in-chief?

(2) Did the District Court err in limiting the scope of the cross-examination of the State's chief witness?

(3) Was there sufficient evidence to support the convictions of criminal sale of dangerous drugs on Counts III and IV?

During the summer of 1988, the Lincoln County Sheriff's Department conducted an undercover drug investigation of various persons in the area around Libby, Montana. Detective Don Bernall hired an undercover agent, Mike Hewson (the informant), to facilitate the investigation. The informant worked from June 7 to August 28, 1988 under the supervision of Bernall and Officer Clint Gassett. Officer Bernall testified that the informant's salary was not contingent upon obtaining arrests and convictions; he was paid a flat rate

for his services and was provided with expense money, including money to buy drugs.

In the State's case-in-chief, Bernall testified that the informant was given a list of potential people to infiltrate that were drug dealers in the community and that the Defendant's name was on that list. The informant also testified in the State's case-in-chief that he was supplied with a list of potential drug dealers, which included the Defendant. The informant then began his investigation by circulating in the bars. He first dealt with a man named Baldwin who then referred him to a woman named Mandy Curtiss as a source for narcotics. Curtiss allegedly became the go between in a series of deals where the informant allegedly bought marijuana, "crank," and cocaine from the Defendant and other persons under investigation.

As a result of the investigation, an information was filed in the District Court on September 15, 1988 charging the Defendant with the following offenses: (1) count I, criminal sale of dangerous drugs, a felony, on July 9, 1988; (2) count II, criminal sale of dangerous drugs, a felony, or in the alternative, conspiracy to commit or accountability for the criminal sale of dangerous drugs, a felony, on July 10, 1988; (3) count III, criminal sale of dangerous drugs, a felony, on July 16, 1988; (4) count IV, criminal sale of dangerous drugs, a felony, or in the alternative,

accountability for the criminal sale of dangerous drugs, a felony, on August 3, 1988, all alleged to have been committed in Lincoln County, Montana.

One of Defendant's theories in defense of the charges was that the informant was a drug dependent individual who was double dealing with the Lincoln County Sheriff's Department. Defendant alleges that the informant had his own extensive drug habit that he was supporting while employed by the Sheriff's Department and that he supplied drugs to the Sheriff's office and alleged that they were from the Defendant, whereas in reality he was supplying the drugs himself. This enabled the informant to sustain his habit and avoid the risk of criminal prosecution.

The State offered testimony tending to establish the necessity of narcotic use by an informant in such clandestine operations as means of maintaining an effective cover. In his testimony, the informant stated that he used drugs as part of his cover. In a pretrial statement, Officer Bernall also stated that the informant showed signs of drug dependence, and that he "used a drugger to catch a drugger." On one occasion, the informant's testimony indicates that he supplied and used cocaine with Curtiss, for the alleged purpose of maintaining his cover. On this occasion, the informant took out two hypodermic needles, allegedly in his

4

possession as part of his cover, and directly injected cocaine intravenously with Curtiss.

Based on such evidence, the Defendant sought to prove that the informant's need for drugs to support his habit was the motivation to use his cover as a law enforcement agent to sell and use drugs and still portray himself as an effective informant. The Defendant also sought to introduce evidence of the informant's drug use in the investigations of other suspects in the Libby area and his drug use prior to being employed as an agent. However, the State's motion in limine to exclude evidence of the informant's involvement with drugs and drug dependency was granted as to any instances beyond the scope of the res gestae of the charges against this particular defendant.

At trial the jury found the Defendant guilty of criminal sale of dangerous drugs on counts I, III, and IV of the information and not guilty on count II. His wife later plead guilty to the criminal sale of dangerous drugs that occurred under count IV. Defendant maintains that her testimony absolves the Defendant of any responsibility for that transaction. Defendant has no prior felony convictions or criminal record except for traffic violations. The Defendant was sentenced to 13 years imprisonment in the Montana State Prison and fined $2500.00. His subsequent motion for new trial was denied, and he now appeals the denial of that

motion and the sufficiency of the evidence as to counts III and IV, raising the issues enumerated earlier.

I.

Defendant maintains that the trial court erred in admitting evidence of the Defendant's bad character during the State's case-in-chief. On direct examination Officer Bernall testified that the informant was provided with a list of "known" drug dealers in the Libby community to infiltrate and that the Defendant was on that list. On redirect examination Bernall further testified:

Q. (by Mr. Spencer): Partly, what are you also relying on?
A. (by Officer Bernall): My personal knowledge.
Q. Of what?
A. Mr. Gommenginger.
Q. And where did you get that personal knowledge from?
A. From confidential informants and other officers.
Q. And what is the information?
A. That he is a cocaine dealer.

The trial court ruled, and the State maintains, that defense counsel opened up the door for the admission of this testimony with the following statement made during opening:

To begin with, we have an informant who is initially before he begins working told by the detective here, Mr. Bernall, that Greg is someone in whom they are interested in getting a conviction for a drug sale.
So the informant immediately has incentive to pursue my client. . . .

6

We disagree. Rule 405(a), M.R.Evid. provides that proof of the Defendant's character may be made by testimony as to reputation or in the form of an opinion. Thus, not only is Officer Bernall's testimony hearsay, it contains elements of both opinion and reputation evidence of the Defendant's bad character as relating to his disposition to commit the crime with which he was charged. See State v. Alberts (1969), 80 N.M. 472, 457 P.2d 991, 993; State v. Ramirez Enriquez (1987), 153 Ariz. 433, 737 P.2d 407, 408. Rule 404(a)(1), M.R.Evid., only allows the prosecution to introduce such evidence of an accused's bad character as proof that he acted in conformity therewith to rebut defense evidence of the accused's good character offered to prove the same. Here, defense counsel's opening statement merely stated that law enforcement told the informant that they were interested in getting a conviction against the Defendant for a drug sale. The opening statement did not even deny that the Defendant was a drug dealer. This statement did not put the Defendant's good character or reputation in the community into issue so as to open the door to allow the State to present character evidence in its case-in-chief. See e.g. State v. Atlas (1986), 224 Mont. 92, 728 P.2d 421 (allowing the State to introduce videotaped evidence in its case-in-chief of Defendant's former lover to refute Defendant's opening state-

7

ment that portrayed him as a loving husband devastated by the death of his wife.)

The testimony of Officer Bernall amounted to evidence of the Defendant's bad character as a drug dealer that would invite the jury to infer the Defendant's guilt based on his alleged reputation as a drug dealer in the Libby community. The Defendant did not put his character into issue, and admission of such evidence constitutes reversible error. See Michelson v. United States (1948), 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168.

## II.

The Defendant also argues that the District Court erred in granting the State's motion in limine restricting the cross-examination of the State's chief witness concerning the informant's drug use to the res gestae of the crimes charged. The Defendant argues that this effectively denied him his fundamental right of confrontation guaranteed by the Sixth Amendment of the United States Constitution.

The State contends that cross-examination was properly limited pursuant to their motion in limine and Rule 608, M.R.Evid. The Rule, which is nearly identical to its federal counterpart, provides in pertinent part:

> Rule 608. Evidence of character and conduct of witness.
> . . .
> (b) Specific instances of conduct. Specific instances of the conduct of a witness, for the

8

> purpose of attacking or supporting his credibility, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness. . . .

Rule 608, M.R.Evid. Under Rule 608, reference to specific instances of conduct for the purpose of proving a witness's character for truthfulness or untruthfulness is never permitted on direct examination of another witness. State v. McLean (1978) 179 Mont. 178, 185, 587 P.2d 20, 25. Specific instances of conduct may, however, be introduced through cross-examination if the trial court in its discretion determines that the evidence is probative of the witness's credibility. Rule 608, M.R.Evid., McLean, supra.

Rule 608(b) is intended to regulate only the use of specific instances of conduct offered to prove that the witness is generally an untruthful person unworthy of belief. On the other hand, bias or motive of a witness to testify falsely is not a collateral issue because it bears directly on the issue of the defendant's guilt; thus, extrinsic evidence is admissible to prove that the witness has a motive to testify falsely. United States v. James (2d Cir. 1979), 609 F.2d 36, 46; Johnson v. Brewer (8th Cir. 1975), 521 F.2d 556; United States v. Kinnard (D.C.Cir. 1972), 465 F.2d 566, 573-574; United States v. Barrett (D.Me. 1984), 598 F.Supp. 469, 475, aff'd (1st Cir. 1985), 766 F.2d 609, 615. See,

also, e.g. State v. Dougherty (1924), 71 Mont. 265, 229 P. 735; State v. Carns (1959), 136 Mont. 126, 345 P.2d 735.

Furthermore, an accused's right to demonstrate the bias or motive of prosecution witnesses is guaranteed by the Sixth Amendment right to confront witnesses. Alford v. United States (1931), 282 U.S. 687, 75 L.Ed. 624, 51 S.Ct. 218; Greene v. McElroy, (1959), 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377; Davis v. Alaska (1974), 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347. In Alford, the Supreme Court held that it was an abuse of discretion and prejudicial error to "cut off in limine all inquiry on a subject with respect to which the defense was entitled to a reasonable cross examination." 282 U.S. at 694, 51 S.Ct. at 220, 75 L.Ed. at 629. In Davis, the trial court improperly restricted the Defendant's attempt to demonstrate bias or motive of the State's witness through cross-examination:

> . . . [w]hile counsel was permitted to ask Green whether he was biased, counsel was unable to make a record from which to argue why Green might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness. . . .

94 S.Ct. at 1111. Here, limitation of cross-examination could also result in the jury viewing the credibility of the informant in a vacuum.

Courts have long recognized that the testimony of informants should be scrutinized closely to determine "whether it is colored in such a way as to place guilt upon a defendant in furtherance of the witness's own interests." Fletcher v. United States (D.C.Cir. 1946), 158 F.2d 321, 322. Such scrutiny is particularly important in narcotics cases involving informant's that are habitual drug users:

> Law enforcement officials are open about their use of informants, but there is less discussion about why their informer's perform.
>
> . . .
>
> . . . the addict is only valuable if he produces fruitful tips or arranges sales which lead to prosecutions. The addict-turned-informer may therefore be desperate not only to produce results for the police, but also to avoid retribution from powerful figures in the drug trade. This desperation may well lead him to lie, and increases the danger that he will misrepresent the involvement of those whom he fingers.
>
> . . .
>
> . . . The Government's use of infiltrator's and informants to combat the drug trade may well be a necessity, and it is not unconstitutional per se. It has been established that their testimony may be used to obtain convictions, even if it is uncorroborated. But when they do testify at trial, the court must exercise special care to protect the defendant's right to the "established safeguards of the AngloAmerican legal system"-- cross-examination and proper instructions to the jury.

Kinnard, 465 F.2d at 571-572 [citations omitted]. In Kinnard, the informant's testimony implicating the defendants was uncorroborated. Defense counsel attempted to establish the informant's addiction through extrinsic evidence of the needle marks on the informant's arms as relevant to the

frequency of his drug use. The Circuit Court of Appeals held that the trial court erred in refusing to allow this evidence.

Here, the informant's testimony is uncorraborated as to counts I and III, and uncorraborated as to the charge of direct sale under count IV. And while defense counsel was permitted to inquire about the informant's needle marks in this case, this inquiry was abruptly terminated at the point that such evidence could indicate drug usage beyond the res gestae, that is beyond the incident of intraveneous drug use with Curtiss that was allegedly part of his cover. All other inquiry into the informant's alleged drug habits was also limited to the res gestae pursuant to the State's motion, thus the prosecution was able to maintain or allude that all of the informant's drug use was merely part of his cover. Because of this limitation, the defense was effectively precluded from inquiring into whether the informant was drug dependent or addicted and whether such dependence gave him a motive to testify falsely.

Generally, it is within the district court's discretion to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harrassment or undue

12

embarrassment. Rule 611(a), M.R.Evid. Also, evidence that is relevant may nevertheless be excluded by the district court if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Rule 403, M.R.Evid. However, the trial court's discretion in exercising control and excluding evidence of a witness's bias or motive to testify falsely becomes operative only after the constitutionally required threshold level of inquiry has been afforded the Defendant. United States v. Tracey (1st Cir. 1982), 675 F.2d 433, 437. Therefore, upon remand for new trial, the Defendant should be afforded latitude in cross-examination, and be allowed to introduce extrinsic evidence regarding the informant's alleged habitual drug use as relevant to his motive to testify falsely, if denied by the informant subject to the usual limitations of Rules 403 and 611, M.R.Evid.

### III.

As his final issue, the Defendant argues that the evidence was insufficient to support a conviction on counts III. and IV. The standard of review of sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

13

reasonable doubt. State v. Krum, (Mont. 1989), 777 P.2d 889, 891, 46 St.Rep. 1334, 1336; State v. Kutnyak (1984), 211 Mont. 155, 174, 685 P.2d 901, 910.

With respect to the charges under count IV for direct sale and accountability for sale of dangerous drugs, the State's evidence tended to establish the following facts: On August 3, 1988, Curtiss went to the informant's house and asked him if he wanted to buy some "crank," a form of methamphetamine. She attempted to set up a deal through the Defendant's wife. The Defendant's wife was unable to get any "crank," but she told the informant that she could get him some cocaine. After some further arrangements, the informant gave the Defendant's wife $100.00 and arranged for a delivery of cocaine at his house. The informant testified that during these arrangements he saw the Defendant's wife talking with the Defendant.

Later, that day, as the informant was talking with Officer Bernall over the phone, he saw the Defendant and his wife drive up in front of the informant's home. Officers Bernall and Gassett later observed the Defendant's vehicle parked in the informant's driveway. The Defendant and his wife came in, sat on the couch, and the Defendant's wife handed the informant a gram of cocaine which he placed on the coffee table. She then asked if she could have some for setting up the deal. The informant agreed and gave her a

14

mirror and a razor blade with which she cut three lines of cocaine. The informant testified that the Defendant and his wife then each snorted a line but he did not. Officer Bernall testified that through the informant's body wire he heard the informant tell the others that he wasn't going to snort a line because he didn't do it that way. The Defendant and his wife left and the informant delivered the remaining cocaine to officer Bernall.

The informant's testimony constitutes direct evidence that the Defendant aided or abetted his wife in the commission of the sale. See § 45-2-302(3), MCA (Accountability); § 45-9-101, MCA (Criminal sale of dangerous drugs.) The Defendant drove his wife to the informant's house and was present during the transaction. At no point did he attempt to terminate his efforts to facilitate the sale. See § 45-2-302(3)(b), MCA. The evidence on count IV is at least sufficient for a rational trier of fact to find the essential elements of the crime of accountability for the criminal sale of dangerous drugs beyond a reasonable doubt. Sections 45-2-302, 45-9-101, MCA; Krum, 777 P.2d at 891; Kutnyak, 685 P.2d at 910.

With respect to count III, alleging criminal sale of dangerous drugs, the informant's testimony was offered to establish the following facts: On July 16th, 1988, the informant met with Curtiss in order to set up a cocaine buy.

15

No police surveillance was used. The informant and Curtiss, along with a friend of Curtiss, eventually went to Harold's Tavern, the Defendant's place of business, where they saw a vehicle, supplied by Defendant's employer and generally used by the Defendant, parked outside. Curtiss and friend went into the bar and returned approximately fifteen minutes later with a "bindle" (approximately one gram) of cocaine which they gave to the informant. The informant testified that Curtiss stated the cocaine was from the Defendant. He also testified that he gave Curtiss $100.00, which she then took into the bar, after taking out some cocaine for setting up the deal. The informant then went home and delivered the cocaine to the Sheriff's Department about two and one-half hours after the transaction.

Curtiss' testimony regarding the essential elements of the offense charged under count III wholly contradicts the testimony of the informant. She testified that during this incident the informant had several bindles of cocaine in his possession and that she and a friend entered the bar at his request looking for someone to purchase cocaine from the informant. She testified that the informant suggested that they see if the Defendant was interested in making a purchase. When she failed to find any prospective purchasers, she then went back outside the bar, returned the cocaine to

16

the informant, took a small amount for her efforts, and returned to the bar.

The only uncontradicted evidence offered through the informant's testimony is that the vehicle the Defendant usually drove was parked outside the tavern. The informant did not observe the alleged sale or the Defendant's presence at the tavern, nor did he have any contact with the Defendant on that day. The only evidence implicating the Defendant is the statement of Curtiss allegedly made to the informant that the Defendant was the source of the cocaine the informant alleges she had just delivered.

The Defendant contends that the alleged statement of Curtiss as testified to by the Defendant was inadmissible due to lack of foundation for introduction of a co-conspirator's statement, under Rule 801(d)(2)(E), M.R.Evid. The State argues that the necessary foundation establishing the existence of a conspiracy was laid and therefore the out of court statement of Curtiss fits under the coconspirator exclusion to the hearsay rule. See Rule 801(d)(2)(E), M.R.Evid.; State v. Stever (1987), 225 Mont. 336, 732 P.2d 853.

To qualify for a hearsay exclusion under Stever, the statement must have been made in the course of and in furtherance of the conspiracy by a coconspirator of the defendant. Rule 801(d)(2)(E), M.R.Evid., 732 P.2d at 857. Furthermore, a separate confrontation clause analysis must

17

be satisfied in order to guarantee the reliability of the challenged coconspirator statements. Stever, 732 P.2d at 859. Relevant criteria to be considered are (1) the declarant's knowledge of the identity and role of the defendant in the crime; (2) the possibility that the declarant was relying upon faulty recollection; and (3) the circumstances under which the statements were made, possibly indicating that the declarant might be lying about the defendant's involvement in the conspiracy; and (4) whether the testimony is so "crucial" to the prosecution or "devastating" to the defense as to require reversal of the conviction. Stever, 732 P.2d at 859; State v. Fitzpatrick (1977), 174 Mont. 186, 569 P.2d 383, 392; United States v. Snow (9th Cir. 1975), 521 F.2d 730, 734-35.

However, we need not determine if the statement is excluded from hearsay under the co-conspirator rule in this case, for even if properly admitted, the statement is not sufficient to support the conviction on count III. It is the same type of statement admitted upon a proper foundation under Rule 801(d)(1)(A), M.R.Evid., which provides:

> (d) Statements which are not hearsay. A statement is not hearsay if:
> (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony. . . .

18

Rule 801(d)(1)(A), M.R.Evid.  See e.g., State v. Fitzpatrick (1980), 186 Mont. 187, 196, 606 P.2d 1343, 1348; see also State v. Charlo (1987), 226 Mont. 213, 215, 735 P.2d 278, 279.

Rule 801(d)(1)(A), theoretically enables the State to make out a prima facie case even if its only evidence is a previous inconsistent statement of this type.  However, if the only evidence of some essential fact is such a previous statement, the party's case fails.  United States v. Orrico (6th Cir. 1979), 599 F.2d 113, 118, citing 4 Weinstein's Evidence 801-74.  It is doubtful that in any but the most unusual cases, a prior inconsistent statement alone will suffice to support a conviction since it is unlikely that a rational trier of fact could find the essential elements of the crime charged beyond a reasonable doubt.  Orrico, 599 F.2d at 118; see also Krum 46 St.Rep. at 1336; Kutnyak, 685 P.2d at 910.

Here, the alleged extra-judicial statement of Curtiss lacks any indicia of reliability, particularly since Curtiss has also been charged for similar offenses arising out of the same series of transactions.  An unreliable prior inconsistent statement should not be the sole, substantive evidence upon which a jury should be allowed to base guilt.  State v. White Water (1981), 634 P.2d 636, 638-39.  The evidence is insufficient to sustain a conviction on count

III, and warranted a verdict directed in favor of the Defendant on that count. White Water, 634 P.2d at 639; State v. Perez (1952), 126 Mont. 15, 243 P.2d 309.

The charges under count III of the information are hereby dismissed, the judgment of the District Court is reversed and the cause is remanded for a new trial.

REVERSED and REMANDED for further proceedings consistent with this opinion.

_R.C. McDonough_
Justice

We Concur:

_L. A. Turnage_
Chief Justice

_John Conway Harrison_

_John C. Sheehy_

_William E. Hunt_

_Diane G. Barz_

_Justices_

20