NO.   94-426

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

     Plaintiff and Respondent,

   v.

THOMAS MILTON,

     Defendant and Appellant,

FILED

DEC 12 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighth Judicial District,
in and for the County of Cascade,
The Honorable John M. McCarvel, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

     Eric Olson, Great Falls, Montana

     For Respondent:

     Joseph P. Mazurek, Attorney General, Barbara Harris,
     Assistant Attorney General, Helena, Montana; Brant
     Light, Cascade County Attorney, Great Falls, Montana


Submitted on Briefs:   August 15, 1996

Decided:   December 12, 1996

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Thomas Milton (Milton) appeals from a jury verdict in the Eighth Judicial District Court, Cascade County, finding him guilty of aggravated assault, a felony. He also appeals the District Court's denial of his motion for a new trial. We reverse and remand.

We address the following issue on appeal:

Did the District Court err in denying Defendant the opportunity to cross-examine the victim about a civil lawsuit the victim had filed against the owner of the bar where the assault occurred?

Factual and Procedural Background

Robert Snyder (Snyder), was at the Beacon Bar in Great Falls, Montana, the night and early morning of March 10-11, 1993. While at the bar, he drank a few beers and visited with friends. As he left the bar about 1:00 am, he noticed a commotion outside the door. Snyder saw a black male with braided hair, Milton, standing near the doorway arguing with another man.

As he walked out the door, Snyder told the two men to stop fighting or he would call the police. Snyder continued toward his car, and as he did so, he felt someone hit him in the neck. Snyder suffered a laceration to the neck just above the clavicle, cutting his jugular vein. Snyder, bleeding profusely, staggered into the parking lot, where he encountered two of his friends. They rushed him to the hospital where he underwent emergency surgery to halt the bleeding. Because of the wound, Snyder lost 30 to 40 percent of his blood volume.

Several law enforcement officers were dispatched to a possible disturbance at the Beacon Bar. When they arrived at the bar, they noticed Milton at the center of a crowd of people. He appeared to be very agitated. The officers took Milton into custody **in an** attempt to quell any disturbance that might develop. The officers were as yet unaware that there had been a stabbing. They frisked Milton prior to placing him in a patrol car, and as they did so, they discovered that he was holding a small knife in his right hand. The officer who confiscated the knife noticed that there appeared to be blood stains on it.

While attempting to question people in the crowd in front of the bar, the officers received a report that there had been a stabbing at the bar sometime earlier that night and that a young man was in the hospital with life-threatening injuries. An officer was dispatched to the hospital to question the **victim** Snyder was able to relate that two black males were involved and that one of the men had braided hair. Snyder later picked Milton out of a photo line-up as the individual who had stabbed him.

Milton was arraigned on April 9, 1993, on the charge of aggravated assault, a felony, as specified in § 45-5-202, MCA (1991), to which he pleaded not guilty. Trial began on April 11, 1994. During cross-examination of Snyder, defense counsel sought to present evidence that Snyder had engaged an attorney to sue the owner of the Beacon Bar as a result of the injuries Snyder suffered in the parking lot of the bar. The District Court refused to permit this evidence. The defense made an offer of proof on this

3

issue, maintaining that evidence of a pending civil lawsuit by Snyder against the owner of the bar over the incident charged against Milton gave Snyder a motive to testify falsely. The court denied the offer of proof as irrelevant. Following five days of trial, the jury found Milton guilty of aggravated assault.

On May 16, 1994, Milton filed a Motion for a New Trial on the grounds that the District Court should have allowed him to cross-examine Snyder regarding the civil lawsuit. The court denied Milton's motion stating that since the complaint did not name Milton as a party defendant, evidence concerning the lawsuit was irrelevant.

Milton was sentenced to 20 years in Montana State Prison with an additional five years for the use of a weapon. The sentences were to run consecutively. Milton was also designated a dangerous offender for purposes of parole eligibility.

## Discussion

Did the District Court err in denying Defendant the opportunity to cross-examine the victim about a civil lawsuit the victim had filed against the owner of the bar where the assault occurred?

The District Court determined that, since Milton was not named as a party defendant in Snyder's civil lawsuit against the Beacon Bar, evidence concerning the lawsuit was irrelevant and inadmissible at Milton's trial on the charge of aggravated assault. Milton contends on appeal that evidence concerning the lawsuit is relevant and admissible to show Snyder's possible bias or motive to

4

fabricate testimony. The State concedes that evidence concerning the lawsuit is relevant, however, it contends that any error by the District Court was harmless "given the overwhelming evidence of the defendant's guilt."

The determination of whether evidence is relevant and admissible is left to the sound discretion of the trial judge and will not be overturned absent a showing of abuse of discretion. State v. Gollehon (1993), 262 Mont. 293, 301, 864 P.2d 1257, 1263. It is generally within the district court's discretion to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to effectively ascertain the truth, avoid any needless waste of time, and to protect witnesses from harassment or undue embarrassment. State v. Gommenginger (1990), 242 Mont. 265, 274, 790 P.2d 455, 461.

Nevertheless, an accused's right to demonstrate the bias or motive of prosecution witnesses is guaranteed by the Sixth Amendment right to confront witnesses. Gommensinger, 790 P.2d at 460 (citations omitted). Since bias or motive of a witness to testify falsely bears directly on the issue of the defendant's guilt, extrinsic evidence is admissible to prove that the witness has a motive to testify falsely. Gommensinger, 790 P.2d at 460 (citations omitted). Thus, the trial court's discretion in exercising control and excluding evidence of a witness' bias or motive to testify falsely becomes operative only after the constitutionally required threshold level of inquiry has been afforded the defendant. Gommenginger, 790 P.2d at 461.

5

In a 1994 case similar to the case before us, this Court held that the proper approach to the question of whether a defendant may cross examine a witness regarding a contemplated civil action against the defendant is to allow the cross-examination. State v. Arlington (1994), 265 Mont. 127, 142, 875 P.2d 307, 316. In Arlington, the District Court granted the State's motion in limine to exclude testimony concerning a contemplated civil lawsuit against Arlington by the victim of an assault. We said in Arlington, that the contemplated lawsuit was relevant evidence affecting the credibility of the victim and that the trial court's decision to prevent the defendant from cross-examining the victim was error because the jury was entitled to hear evidence that the victim had an interest in the outcome of the trial. Arlington, 875 P.2d at 315-16.

Although, unlike Milton, Arlington would have been a party defendant in any civil lawsuit, the reasoning we used in Arlington applies in the instant case because Snyder's chances of prevailing in his civil lawsuit would be greatly increased if Milton was convicted of the charges against him. Snyder alleged in his complaint that employees of the bar "served alcoholic beverages to Thomas Milton even though he was a visibly intoxicated person" and that "[a]s a result of Thomas Milton's intoxicated condition, he assaulted [Snyder] and stabbed him with a knife." In addition, Snyder alleged that

> [the owner of the bar] was aware of the dangerous propensity of some of its customers including Thomas Milton and negligently failed to provide security sufficient to protect its customers such as [Snyder].

Snyder did have a motive to testify falsely. Consequently, even though Milton was not named as a party defendant in Snyder's civil lawsuit, evidence of the lawsuit was relevant and admissible at Milton's criminal trial. Therefore, we hold that the District Court erred in denying defense counsel the opportunity to cross-examine Snyder regarding the lawsuit.

We concluded in <u>Arlington</u>, however, that the error there was harmless. The question in that case was whether the force used by Arlington to defend himself was excessive. Arlington admitted beating the victim and there was extensive evidence that his attack upon the victim was excessive and unreasonable. We said in <u>Arlington</u> that the fact that the **victim** was contemplating a civil action against Arlington would not have **materially** affected the jury's verdict in the face of "the overwhelming evidence provided by the medical testimony and photographic evidence" that the **victim** was severely beaten. <u>Arlington,</u> **875** P.2d at 316.

After reviewing the record in the case before us, we hold that, contrary to the State's contention, the evidence against Milton is not "overwhelming" and thus the error was not harmless. Other than the testimony of Snyder, the only individual to see any contact between Milton and Snyder on the night Snyder was stabbed said that the two "came together and fell apart." This witness testified that she did not see anyone stabbed nor did she see anyone with a knife.

The knife that was taken from Milton was tested by a forensic serologist at the State Crime Lab in Missoula, but she was unable

7

to determine if a stain found on the knife was human blood. Milton's jacket was also tested for blood stains by the State Crime Lab, but the forensic serologist could not definitely say that the blood found on the jacket was Snyder's. She could only state that one genetic marker was consistent with Snyder's blood sample along with 21 percent of the population.

In State v. Rothacher (1995), 272 Mont. 303, 901 P.2d 82, we quoted with approval a 1967 United States Supreme Court case wherein that Court stated that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Rothacher, 901 P.2d at 87 (quoting Chapman v. California (1967), 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705).

Accordingly, because we do not find the error in this case "harmless beyond a reasonable doubt," we reverse Milton's conviction on the charge of aggravated assault and remand for a new trial.

_____
Justice

We Concur:

_____

_____

_____
Justices