No. 95-181

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

Plaintiff and Respondent,

v.

MICHAEL DARON SMITH,

Defendant and Appellant.

FILED

MAY 14 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Patrick D. Sherlock; Sherlock & Nardi,
Kalispell, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General,
John Paulson, Ass't Attorney General,
Helena, Montana

Thomas Esch, Flathead County Attorney,
Ed Corrigan, Deputy Flathead County Attorney,
Kalispell, Montana

Submitted on Briefs:  February 15, 1996

Decided:  May 14, 1996

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Michael Daron Smith (Smith) appeals from the judgment and sentence entered by the Eleventh Judicial District Court, Flathead County, on a jury verdict finding him guilty of the offense of felony theft of stolen property. We affirm.

We address the following dispositive issues:

1. Did the District Court abuse its discretion in admitting David Ferree's testimony regarding his discussions with Smith?

2. Did the District Court abuse its discretion in excluding Ricky Burke's testimony regarding Smith's statements to him?

3. Did the District Court err in refusing Smith's proposed jury instructions on theft of lost or mislaid property?

4. Did Smith's sentence violate his constitutional right to due process?

On May 22, 1994, David Ferree (Ferree) observed two juveniles riding a motorcycle and a "four-wheeler" all terrain vehicle (collectively, the bikes) in a mountainous area near Bowser Lake, northwest of Kalispell, Montana. Later that day, Ferree observed the juveniles drive away from the area in a pickup truck without the bikes. Ferree suspected the bikes had been stolen and then hidden in the area.

Ferree told Smith about the bikes and where he thought they were hidden. The men discussed whether the bikes might be stolen property. They decided to retrieve the bikes and Smith borrowed money from his friend Ricky Burke to buy gasoline for that purpose. After retrieving the bikes, Smith and Ferree took them to Smith's residence, cleaned them and placed them in Smith's garage.

2

Smith and Ferree were certain that the bikes did not belong to the juveniles Ferree had seen riding them. They discussed whether to try to collect a reward for returning the bikes or sell them out of Montana. They checked Crimestoppers listings and the lost and found advertisements in the local newspaper and listened to the radio for any information regarding the bikes. Smith told Ferree that he had contacted the police, presumably to determine if the bikes were reported stolen.

An acquaintance of Ferree's, Russell Geldrich, examined the bikes with the supposed purpose of purchasing them. Smith and Ferree quoted him a price and stated their preference that the bikes be taken where they could not be seen.

The bikes had been reported stolen on May 11 and 15, 1994. Acting on a tip about their location, a detective from the Flathead County Sheriff's Department and a detective from the Kalispell Police Department went to Smith's residence on June 2, 1994. After gaining permission from Smith's wife to search the garage, the detectives recovered the bikes.

The State of Montana (State) charged Smith by information with two counts of felony theft in violation of § 45-6-301(1), MCA. The information subsequently was amended to charge Smith with felony theft of the bikes or, in the alternative, with felony theft of stolen property under § 45-6-301(3), MCA. Smith rejected an offered plea bargain and exercised his right to a jury trial.

Smith's trial was held on February 16, 1995. The jury found Smith not guilty of felony theft of the bikes and guilty of felony

3

theft of stolen property. The District Court subsequently sentenced Smith to the Montana Department of Corrections and Human Services for placement in an appropriate correctional institution or program for ten years. Smith appeals.

1. Did the District Court abuse its discretion in admitting David Ferree's testimony regarding his discussions with Smith?

In addition to charging Smith, the State also charged Ferree with felony theft of the bikes. Ferree agreed to testify against Smith and to plead guilty to any offense of which Smith ultimately was convicted. In anticipation of Ferree's testimony on the State's behalf, Smith filed a pretrial memorandum addressing coconspirator testimony.

During the State's direct examination of Ferree, the State questioned him regarding his statements to Smith and their discussions about the bikes. Based on the arguments in his pretrial memorandum, Smith objected to Ferree's testimony concerning both his statements to Smith and the discussions between himself and Smith. The District Court overruled the objection and Ferree testified that he and Smith discussed the ownership of the bikes and suspected the bikes were stolen; at one point, Ferree affirmatively stated that he and Smith were sure the bikes did not belong to the juveniles Ferree observed riding them. Ferree also testified that he and Smith discussed attempting to either collect a reward for the bikes or sell them and send them out of state.

Smith argues generally that Ferree's testimony was inadmissible. More specifically, he argues that Ferree testified as a coconspirator and that, because the State did not first

4

establish the existence of a conspiracy between Smith and Ferree by independent evidence, Ferree's testimony regarding his discussions with Smith and anything Smith said to him was not admissible pursuant to Rule 801(d)(2)(E), M.R.Evid. We review a trial court's evidentiary rulings to determine whether the court abused its discretion. State v. Stringer (1995), 271 Mont. 367, 374, 897 P.2d 1063, 1067 (citation omitted).

"A statement is not hearsay if: . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Rule 801(d)(2)(E), M.R.Evid. Before a coconspirator's statement may be admitted under Rule 801(d)(2)(E), M.R.Evid., the State must establish a proper foundation, by a preponderance of the independent evidence, that a conspiracy exists. State v. Stever (1987), 225 Mont. 336, 342, 732 P.2d 853, 857. The State must show that a conspiracy exists, that the declarant coconspirator and the defendant were members of the conspiracy and that the declaration was made in furtherance of the conspiracy. Stever, 732 P.2d at 857 (citations omitted). Smith contends that the State failed to meet the foundational requirements of Stever and, therefore, that the District Court abused its discretion in admitting Ferree's testimony. The State does not assert that it established the requisite foundation for admission under Rule 801(d)(2)(E), M.R.Evid. It argues that Ferree's testimony was admissible under other provisions of the Montana Rules of Evidence and, therefore,

5

that whether it met the foundational requirements for admission under Rule 801(d)(2)(E) is not relevant.

We observe, at the outset, that if evidence is admissible under one provision of the rules of evidence, it is admissible regardless of inadmissibility under another rule. See, e.g., Smith v. Updegraff (8th Cir. 1984), 744 F.2d 1354, 1364-65 n.5 (citing United States v. Hewitt (5th Cir. 1981), 663 F.2d 1381). Thus, if Ferree's testimony regarding his own statements to Smith and the discussions between the two is otherwise admissible, we need not address Smith's contention that it was inadmissible under Rule 801(d)(2)(E), M.R.Evid., because the Stever requirements were not met.

We first address Smith's objection to the State's question to Ferree regarding what Ferree told Smith. The record reflects that, subsequent to the posing of the question and the District Court's indication--in response to Smith's objection--that the question did not appear to solicit hearsay, Ferree responded that he told Smith about the bikes and his feelings about the ownership of the bikes. A witness may testify to facts within that witness' personal knowledge. Rule 602, M.R.Evid. Here, Ferree testified to facts that were within his own personal knowledge, namely his own statements.

Moreover, Ferree himself was the "declarant" under Rule 801(b), M.R.Evid., with regard to his own statements and he was testifying at trial as to those statements. For these reasons,

6

Ferree's testimony about his own statements did not come within the definition of hearsay contained in Rule 801(c), M.R.Evid.

We next address Smith's objection to Ferree's alleged coconspirator testimony concerning his discussions with Smith and Smith's statements during those conversations. The State argues that Smith's statements in these conversations were admissions under Rule 801(d)(2)(A), M.R.Evid., and, therefore, "not hearsay" pursuant to the express language of Rule 801(d). We agree.

An "admission by party-opponent" under Rule 801(d)(2)(A), M.R.Evid., is a statement which is "the party's own statement" offered against the party. Here, Smith is the party defendant. Smith's statements during discussions with Ferree obviously were Smith's own statements. Moreover, those statements of Smith's were offered against Smith, via Ferree's testimony, by the State. As was the case in State v. Ottwell (1989), 239 Mont. 150, 158, 779 P.2d 500, 505, Smith's statements were made by the party defendant in a criminal case and offered against the party, by the prosecution, through the testimony of the person to whom they were made. We conclude that Smith's statements to Ferree were "not hearsay" under Rule 801(d)(2)(A), M.R.Evid.

Finally, it is clear that Ferree's testimony about his statements to Smith and Smith's statements during their discussions was relevant under Rule 401, M.R.Evid., in that it related to Smith's knowledge and mental state both at the time he and Ferree obtained control over the bikes and at later times. The mental state element of the alternative offenses with which Smith was

7

charged is "purposely or knowingly." See §§ 45-6-301(1) and (3), MCA. Generally, "[a]ll relevant evidence is admissible." Rule 402, M.R.Evid.

We conclude that Ferree's testimony about his own statements and Smith's statements to him was not hearsay and was relevant. Therefore, we further conclude that it was admissible under Rule 402, M.R.Evid., without regard to the foundational requirements for admissibility under Rule 801(d)(2)(E), M.R.Evid. See Smith, 744 F.2d at 1364-65. We hold, therefore, that the District Court did not abuse its discretion in admitting Ferree's testimony concerning his discussions with Smith or Smith's statements to him.

2.  Did the District Court abuse its discretion in excluding Ricky Burke's testimony regarding Smith's statements to him?

Ricky Burke (Burke), the friend from whom Smith borrowed money for gas needed to retrieve the bikes, testified on Smith's behalf at trial. The State objected, on hearsay grounds, to questions of Burke about Smith's statements to him regarding Smith's purpose in borrowing gas money. Smith's counsel responded that, because Smith was a party to the case, his statements to Burke were declarations by a party and, therefore, admissible. The District Court expressed doubts, but overruled the State's objection.

Burke's testimony concerning Smith's statements to him continued. The District Court subsequently reversed its earlier ruling and determined that Smith's statements to Burke were not admissions under Rule 801(d)(2)(A), M.R.Evid., presumably because they were not offered against Smith. On that basis, the court

precluded further testimony from Burke regarding Smith's statements to him.

We observe at the outset that Smith does not contend on appeal that the District Court abused its discretion in determining that Smith's statements to Burke were not admissions under Rule 801(d)(2)(A), M.R.Evid. Instead, Smith argues that his statements to Burke were admissible under the hearsay exception for then-existing state of mind set forth in Rule 803(3), M.R.Evid. However, Smith did not offer Burke's testimony to the District Court pursuant to Rule 803(3), M.R.Evid.; as set forth above, the basis on which the testimony was offered was Rule 801(d)(2)(A), M.R.Evid.

"It is axiomatic that a party may not change the theory on appeal from that advanced in the district court." State v. Henderson (1994), 265 Mont. 454, 458, 877 P.2d 1013, 1016 (citation omitted). Smith having failed to raise the admissibility of Burke's testimony under Rule 803(3), M.R.Evid., in the District Court, he may not raise it in this Court. See State v. Johnson (1993), 257 Mont. 157, 162, 848 P.2d 496, 499. We consider for review only those questions raised in the trial court (Johnson, 848 P.2d at 499) and, therefore, we decline to address the admissibility of Burke's testimony under Rule 803(3), M.R.Evid.

3. Did the District Court err in refusing Smith's proposed jury instructions on theft of lost or mislaid property?

Faced with alternative charges of felony theft and felony theft of stolen property, Smith filed a pretrial memorandum addressing what he denominated as the § 45-6-302, MCA, "lesser

9

included offense" of theft of lost or mislaid property, a misdemeanor. He also submitted a series of proposed jury instructions on that offense, all of which were refused by the District Court. Smith argues that he was entitled to the instructions and that the court's refusal to give them constituted error.

A criminal defendant is entitled to a requested lesser included offense instruction where, based on the evidence, the jury rationally could be warranted in convicting on the lesser offense and acquitting on the greater offense. Section 46-16-607(2), MCA; State v. Fisch (1994), 266 Mont. 520, 522, 881 P.2d 626, 628. Thus, we first must determine whether, as a matter of law, theft of lost or mislaid property is a lesser included offense of theft of stolen property. If so, we then must determine whether Smith's proposed instructions were supported by the evidence.

Insofar as it is relevant here, an "included offense" is statutorily defined as one which "is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]" Section 46-1-202(8)(a), MCA. The term "facts," as used in the statute, refers to the statutory elements of the offense and not the individual facts of each case. State v. Ritchson (1981), 193 Mont. 112, 116, 630 P.2d 234, 237.

Section 46-1-202(8)(a), MCA, does not, by its terms, define a "lesser" included offense. The test we traditionally have applied in determining whether an offense is a lesser included offense of another offense was stated in Blockburger v. United States (1932),

10

284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed.2d 306, 309. See, e.g., State v. Arlington (1994), 265 Mont. 127, 163, 875 P.2d 307, 330; State v. Long (1986), 223 Mont. 502, 510, 726 P.2d 1364, 1369. In the context of a defendant's entitlement to jury instructions on an alleged lesser included offense, we have characterized the Blockburger test as stating that "separate distinct offenses require proof of additional facts, where lesser included offenses do not." Long, 726 P.2d at 1369. Applying that test in Long, we concluded that "the statutes defining misdemeanor assault and sexual assault clearly indicate that misdemeanor assault is not a lesser included offense of sexual assault" because misdemeanor assault requires proof that the physical contact be of an insulting or provoking nature and no such proof is required for sexual assault. Long, 726 P.2d at 1369.

The offense of theft of stolen property is committed when a person purposely or knowingly obtains control over stolen property, knowing the property to have been stolen by another, and has the purpose of depriving the owner of the property. Section 45-6-301(3)(a), MCA. Thus, to establish the offense of theft of stolen property, the State must prove--among other things--that the property was stolen and that the defendant knew the property was stolen by another person.

The offense of theft of lost or mislaid property is committed when a person obtains control over lost or mislaid property and:

> (a) knows or learns the identity of the owner or knows, is aware of, or learns of a reasonable method of identifying the owner;

11

(b) fails to take reasonable measures to restore the property to the owner; and

(c) has the purpose of depriving the owner permanently of the use or benefit of the property.

Section 45-6-302, MCA. To establish the offense of theft of lost or mislaid property, the State must prove--among other things--that the property was lost or mislaid; that the defendant knew or learned the owner's identity or learned of a reasonable method of identifying the owner; and that the defendant failed to take reasonable measures to return the property.

It is clear from this limited comparison of the elements of the offenses of theft of stolen property and theft of lost or mislaid property that these are distinct offenses, each of which requires proof of at least one "fact" that the other does not. While both offenses are premised on a person obtaining control over property belonging to another, the very nature of the property at the time control is obtained is markedly different in the two offenses: for one offense, the State must prove that the property was stolen property while, for the other offense, the State must prove that the property was lost or mislaid property. Nor does the existence of a substantially similar element in the two offenses-- "has the purpose of depriving the owner of the property" in the offense of theft of stolen property and "has the purpose of depriving the owner permanently of the use or benefit of the property" in theft of lost or mislaid property (see §§ 45-6-301(3)(a) and 45-6-302(c), MCA)--render the latter a lesser included offense of the former. Substantial overlap in the proof which would be offered to establish both offenses does not make one

12

offense a lesser included offense of another where each requires proof of different facts. Arlington, 875 P.2d at 330. Thus, we conclude that theft of lost or mislaid property is not a lesser included offense of theft of stolen property.

As we observed at the outset of our discussion of this issue, we need only reach the secondary question of whether evidence supported Smith's proposed instructions regarding theft of lost or mislaid property if we determine that that offense is a lesser included offense of theft of stolen property. Having concluded otherwise, no amount of evidence could have entitled Smith to instructions on the offense of theft of lost or mislaid property. We hold, therefore, that the District Court did not err in refusing Smith's instructions.

4. Did Smith's sentence violate his constitutional right to due process?

Prior to trial, the State offered Smith a plea agreement under which it would recommend a probationary sentence, deferred or suspended depending on his prior record, in exchange for a guilty plea to the theft charge. Smith rejected the offer and exercised his right to a jury trial. After the jury found Smith guilty of the offense of felony theft of stolen property, the District Court sentenced Smith to the Department of Corrections and Human Services for placement in an appropriate institution or program for ten years. Smith contends that the sentence penalized him for exercising his right to a jury trial in violation of his right to due process.

13

District courts have broad discretion in sentencing defendants convicted of criminal offenses. State v. Lloyd (1984), 208 Mont. 195, 199, 676 P.2d 229, 231. We generally review a criminal sentence only for legality--that is, to determine whether it is within the statutory parameters established by the legislature; where a sentence is within those parameters, we generally will affirm it. See State v. Almanza (1987), 229 Mont. 383, 386, 746 P.2d 1089, 1091. There are, however, exceptions to these general rules.

Punishing a person for exercising a constitutional right is a basic due process violation. State v. Baldwin (1981), 192 Mont. 521, 525, 629 P.2d 222, 225 (citations omitted). Indeed, in Baldwin, we vacated and remanded for resentencing because we were unable to determine from the record whether the defendant was punished for exercising his right to a jury trial after rejecting a plea agreement. Baldwin, 629 P.2d at 226.

In Baldwin, the trial court was directly involved in the unsuccessful plea negotiation process. The defendant chose not to plead guilty and the case proceeded to trial. After the defendant's conviction, the trial court imposed a much harsher sentence than it originally had offered in exchange for a guilty plea. Baldwin, 629 P.2d at 224. We held that a trial court which involves itself in an unsuccessful plea bargaining process and, thereafter, imposes a harsher sentence than was offered in exchange for a guilty plea, must expressly point out the factors which justify the increased sentence. Baldwin, 629 P.2d at 226. Because

14

the trial court had not done so, there was no assurance that the sentence was not increased in retaliation for the defendant's insistence on a jury trial; on that basis, we remanded for resentencing. Baldwin, 629 P.2d at 226. We followed Baldwin and remanded for resentencing on substantially similar facts in State v. Tate (1982), 196 Mont. 248, 639 P.2d 1149.

Here, Smith concedes that the District Court was not involved in any way in the unsuccessful plea negotiations between himself and the State. Thus, Baldwin has no application here.

Smith also concedes that the District Court specified the bases for the sentence it imposed, and he does not challenge any of those bases. Simply put, nothing on the record before us supports Smith's claim that his sentence was improperly increased because he exercised his right to a jury trial. We hold, therefore, that Smith's sentence did not violate his constitutional right to due process.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

15