FILED

05/04/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0586

DA 19-0586

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 104

STATE OF MONTANA,

　　　　Plaintiff and Appellee,

　　v.

GREGORY GEORGE DENNY,

　　　　Defendant and Appellant.

APPEAL FROM:　　District Court of the Eighth Judicial District,
　　　　　　　　In and For the County of Cascade, Cause No. DDC 18-207
　　　　　　　　Honorable John W. Parker, Presiding Judge

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　Trevor Carlson, Carlson Law, PLLC, Helena, Montana

　　　　For Appellee:

　　　　Austin Knudsen, Montana Attorney General, Jonathan M. Krauss, Assistant
　　　　Attorney General, Helena, Montana

　　　　Joshua A. Racki, Cascade County Attorney, Stephanie Fuller, Ashley
　　　　Archer, Deputy County Attorneys, Great Falls, Montana

　　　　　　　　　Submitted on Briefs:　March 10, 2021

　　　　　　　　　　　　Decided:　May 4, 2021

Filed:

_____
　　　　　　　　Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 A jury found Appellant Gregory George Denny guilty of felony Theft by Possession of Stolen Property and four misdemeanors: Obstructing a Peace Officer; Fleeing or Eluding a Peace Officer; Speeding; and Driving Without a Valid License. Denny appeals from his conviction entered in the Eighth Judicial District Court, Cascade County. We affirm.

¶2 Denny presents the following issues for review:

1. *Did the District Court properly deny Denny's motions for mistrial after two separate references to Denny's "jail" status were made by State witnesses?*

2. *Did the District Court properly refuse Denny's proposed jury instruction for unauthorized use of a motor vehicle as a lesser-included offense of theft by possession of stolen property?*

3. *Was Denny denied effective assistance of counsel?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 On March 29, 2018, Denny was driving a stolen vehicle, a Chevrolet Avalanche, and led police on a high-speed chase through Great Falls, Montana. The vehicle was displaying a license plate that had been stolen off another vehicle, and Denny did not have a valid driver's license at the time. Accordingly, the State charged Denny by Information with Count I: Theft, a felony, in violation of § 45-6-301(1)(a), MCA; Count II: Theft, a misdemeanor, in violation of § 45-6-301(3)(a), MCA; Count III: Obstructing a Peace Officer or Other Public Servant, a misdemeanor, in violation of § 45-7-302, MCA; Count IV: Fleeing or Eluding a Peace Officer, a misdemeanor in violation of § 61-8-316, MCA; Count V: Speeding, a misdemeanor, in violation of § 61-8-310(1), MCA; and Count VI: Driving Without a Valid Driver's License, a misdemeanor, in violation of

2

§ 61-5-102, MCA. Count I was later amended to Theft, a felony, in violation of § 45-6-301(3)(c), MCA.

Ineffective Assistance of Counsel: Transactional Evidence

¶4 A two-day jury trial began on January 28, 2019. On the first day of trial, the District Court heard argument from both parties regarding the State's motion in limine to introduce testimony that Denny traded methamphetamine and/or heroin for the stolen vehicle. The State argued this was admissible under the transaction rule as codified in § 26-1-103, MCA, and the evidence was inextricably linked to, and explanatory of, the crime charged. Denny objected on grounds that the evidence was highly prejudicial and that the witness providing the evidence, Brian Osborn, was neither reliable nor credible and might be accountable for the charged theft and possession of the stolen vehicle. Osborn, who was incarcerated in the county jail, was the State's key witness, testifying to most of the details required to convict Denny of the charged offenses. The District Court reserved its ruling until it came time for the parties to introduce testimony on the matter.

¶5 On the second day of trial, and in anticipation of Osborn's testimony, the State made an offer of proof, changing its argument slightly. The State now sought to elicit testimony that Denny had traded drugs for a stolen license plate, not for the vehicle. The State offered to have Osborn testify that Denny received the license plate in a transaction that took place at a house in north Great Falls. Osborn would testify that he and Denny were together in the house and that he overheard the transaction take place—namely, that Denny was

3

bartering with someone to get the license plate and that Denny ultimately gave that person heroin and/or methamphetamine in exchange for the license plate.

¶6     Denny's attorney reversed his position and stipulated to the admission of the evidence. The District Court clarified that Denny was not objecting to the evidence and then granted the State's motion, concluding the evidence was admissible under the transaction rule. The court limited the State from introducing any other evidence of Denny's history of dealing drugs.

¶7     Osborn's testimony was consistent with the State's offer of proof. Osborn testified that Denny—while Osborn was helping Denny do some modifications and repairs to the Avalanche—removed a temporary paper license tag from the rear of the stolen vehicle and put on the dealer license plate he had purchased "from two individuals over at a house on the north side . . . ." When asked how Denny obtained the plate, Osborn stated that "some transaction happened, and a license plate was traded, and a deal was made for it. It was pretty cheap because…the plate wouldn't last long because it was a stolen dealer tag off [another] vehicle . . . ." Osborn stated Denny used the fact that the plate was stolen as a bartering chip to get a better deal; it was Osborn's impression that Denny used that fact as a bargaining point. Osborn testified that Denny gave them some methamphetamine and a little bit of heroin in exchange for the stolen plate.

Motions for Mistrial

¶8     On the second day of trial, Denny made two motions for mistrial that are at issue on appeal. First, the State sought to introduce a video recording of an incident that occurred

4

when Denny returned to jail after his first day of trial, the night before Osborn was set to testify. The video showed Denny communicating by hand signals with Osborn, presumably in an attempt to intimidate Osborn before testifying. Prior to introducing the video, the prosecutor asked Osborn whether Denny had attempted to make contact with him in the last 24 hours. Osborn responded, "At the county jail, yes, after he came back from his court appearance here." Denny's counsel objected and moved for a mistrial. Outside the presence of the jury, Denny's counsel argued that Osborn's reference to "jail" "expose[d] the jury to the fact that [Denny was] an inmate," a fact the defense had made efforts to keep out of the record. The District Court denied the motion.

¶9     Osborn proceeded with his testimony, describing the hand signals Denny made towards Osborn. Osborn testified that Denny got his attention and made a gesture towards Osborn, to "shut [his] mouth." Osborn testified that the gesture Denny made was covering the lips and "like turned fingers . . . sort of like a locking device[.] And then the second one was like a slice across the throat." Osborn said the gestures shocked and scared him. Osborn stated that he began gesturing back to Denny:

> I started making my hands up like . . . "no, no, don't worry," you know, and like everything's cool. Gave him a thumbs up. Trying to convey that I was . . . not going to be here, I guess . . . . Because at that point I was scared.

Osborn testified, "I guess that [Denny] took that as confirmation that I was going to shut my mouth . . . . And then, he gave me what I believe was a heart symbol . . . . That he loves me."

5

¶10    The second motion for mistrial arose out of the State's attempt to introduce an audio recording of Denny during a jail phone call.  In the call, Denny made admissions about running from the cops in the Avalanche.  The State called Detective Derek Mahlum to testify about his investigation of the stolen Avalanche and that he had listened to and reviewed the audio recording as part of his investigation.  When the State asked Detective Mahlum to identify the "voice recording," marked as State's Exhibit 5, Detective Mahlum responded, "Without listening to it, based on the label, it's a jail visitation between Mr. Greg Denny . . . ."  Defense counsel again moved for a mistrial.  The District Court excused the jury and defense counsel argued that Detective Mahlum's characterization of the phone call as a "jail phone call" was "enough for a mistrial," and was cumulative error, referring to the first motion for mistrial.  The court, again, denied Denny's motion for mistrial.

Jury Instructions

¶11    During jury instruction deliberation, Denny asked the District Court for a lesser-included offense instruction.  He argued that the jury should receive an instruction for unauthorized use of a motor vehicle, under § 45-6-308(1), MCA, as a lesser-included offense of theft by possession of stolen property, under § 45-6-301(3)(c), MCA.  The District Court denied Denny's request.

¶12    The jury found Denny guilty on all charges except Count II, which pertained to theft of the license plate.  The District Court sentenced Denny on Count I to the Montana Department of Corrections for a period of three years with one year suspended.

The court sentenced Denny on Count III to a suspended six-month commitment in county jail, concurrent to Count I. On Count IV the court sentenced Denny to a suspended one-year commitment in county jail, concurrent to Count I and III. The court sentenced Denny to a fine of $10 for Count V and a fine of $50 for Count VI, both of which were satisfied by credit for time served. The District Court ordered Denny to pay restitution in the amount of $740.50.

## STANDARDS OF REVIEW

¶13 This Court reviews the denial of a motion for a mistrial to determine whether the district court abused its discretion. *State v. Gunderson*, 2010 MT 166, ¶ 91, 357 Mont. 142, 237 P.3d 74. A mistrial is an extreme remedy and may only be granted for manifest necessity as required by the ends of justice. *State v. Flores*, 1998 MT 328, ¶ 11, 292 Mont. 255, 974 P.2d 124. We review a district court's refusal to give a jury instruction on a lesser-included offense for an abuse of discretion. *State v. Daniels*, 2017 MT 163, ¶ 9, 388 Mont. 89, 397 P.3d 460. We review claims of instructional error in a criminal case to determine whether the jury instructions, as a whole, fully and fairly instructed the jury on the law applicable to the case. *Daniels*, ¶ 9. Because a trial court has broad discretion when instructing a jury, reversible error will occur only if the jury instructions prejudicially affected the defendant's substantial rights. *Daniels*, ¶ 9. A defendant is prejudiced by the failure to give a requested lesser-included offense instruction when the evidence could support a jury finding on the lesser-included offense. *Daniels*, ¶ 9. This Court considers ineffective assistance of counsel (IAC) claims on direct appeal only if they are based solely

on the record. *State v. Ugalde*, 2013 MT 308, ¶ 28, 372 Mont. 234, 311 P.3d 772. When reviewable, such claims present mixed questions of law and fact that we review de novo. *Ugalde*, ¶ 28.

## DISCUSSION

¶14 *Did the District Court properly deny Denny's motions for mistrial after two separate references to Denny's "jail" status were made by State witnesses?*

¶15 Denny argues on appeal that the District Court wrongly denied his motions for mistrial based on Osborn's testimony that he had communicated with Denny "at the county jail," and again when Detective Mahlum referred to the audio recording as a "jail visitation." Denny argues that both references to "jail" revealed to the jury Denny's status as an inmate and was highly prejudicial. On appeal, Denny has not assigned any error to the introduction of the audio and video recordings.[1]

¶16 A district court's determination of whether to grant a motion for mistrial must be based on whether the defendant has been denied a fair and impartial trial. *State v. Soraich*, 1999 MT 87, ¶ 17, 294 Mont. 175, 979 P.2d 206. A mistrial should be denied for technical errors or defects that do not affect the substantial rights of the defendant and the record is sufficient to establish the defendant's guilt. *State v. Long*, 2005 MT 130, ¶ 24, 327 Mont. 238, 113 P.3d 290 (quoting *State v. Brady*, 2000 MT 282, ¶ 14, 302 Mont. 174, 13 P.3d 941). A mistrial is appropriate, however, "when a reasonable possibility exists that

---

[1] At trial, Denny objected to the video recording and the recorded audio call on other grounds not disputed on appeal. When the District Court asked whether Denny had any objections to admitting the video recording and the audio recording of the phone call, Denny stated that he had no objections that he had not already made.

8

inadmissible evidence may have contributed to the conviction." *Long*, ¶ 24 (citing *Brady*, ¶ 14).

¶17 While courts cannot rid a legal proceeding of "every practice tending to single out the accused from everyone else in the courtroom," a defendant's right to the presumption of innocence must be protected. *Holbrook v. Flynn*, 475 U.S. 560, 567 (1986).

> Central to the right to a fair trial, guaranteed by the Sixth and Fourteenth Amendments, is the principle that "one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at a trial."

*Holbrook*, 475 U.S. at 567 (quoting *Taylor v. Kentucky*, 436 U.S. 478, 485 (1978)). Although permitted in some situations for security purposes, this Court has cautioned against presenting a defendant in shackles or restraints to the jury when possible because such an appearance can prejudice the jury. *See State v. Herrman*, 2003 MT 149, ¶¶ 37-38, 316 Mont. 198, 70 P.3d 738; *State v. Baugh*, 174 Mont. 456, 461-63, 571 P.2d 779, 782-83 (1977); *Porter v. State*, 2002 MT 319, ¶¶ 27-32, 313 Mont. 149, 60 P.3d 951; *State v. Pendergrass*, 189 Mont. 127, 133-34, 615 P.2d 201, 205 (1980); *State v. Hartsoe*, 2011 MT 188, 361 Mont. 305, 258 P.3d 428; *State v. Rickett*, 2016 MT 168, 384 Mont. 114, 375 P.3d 368. Visible restraints at trial create a high risk of prejudice because they indicate that the court believes there is a need to separate the defendant from the community at large, creating an inherent danger that the jury may form the impression that the defendant is dangerous or untrustworthy. *Hartsoe*, ¶ 32 (internal citations, quotation marks, and brackets omitted). Restraints also may prejudice the defendant by undermining the

9

presumption that the defendant is innocent. *Hartsoe*, ¶ 32. In sum, our case law on shackles and restraints recognizes that "a defendant is ordinarily entitled to be relieved of handcuffs or other restraints at trial." *State v. Herrick*, 2004 MT 323, ¶ 13, 324 Mont. 76, 101 P.3d 755 (citing *Herrman*, ¶ 38; *Porter*, ¶¶ 28-29; *Pendergrass*, 189 Mont. at 133-34, 615 P.2d at 205; *Baugh*, 174 Mont. at 462, 571 P.2d at 782).

¶18 Denny argues on appeal that witness testimony about a defendant's incarceration has a similar effect on a jury and argues that Osborn's comment was no different than if Denny had appeared at trial in restraints and prison clothes. Our consideration of this issue cannot be confined to the two isolated references to "jail." The circumstances surrounding Denny's trial provide context for Denny's motions for mistrial and the District Court's denials of the motions. We turn to the record for such context.

¶19 When defense counsel objected and moved for mistrial after Osborn's testimony regarding "county jail," the District Court sustained the objection and excused the jury. Defense counsel argued a mistrial was appropriate because Osborn's reference to "jail" exposed the jury to the fact that Denny was an inmate. The State argued Osborn's reference to jail could be remedied by instructing Osborn to refrain from referencing that he was currently in jail with Denny, instructing the jury to disregard Osborn's prior testimony, and having Osborn re-testify to the conversation without reference to jail. The District Court noted that a cautionary instruction would not remedy the fact that the jury now knew Denny was an inmate.

¶20 The court then asked both parties whether the reference to "jail" and the State's next line of testimony were more prejudicial than probative. Thus, the issue shifted from Osborn's statement that Denny contacted him in county jail—the basis of Denny's mistrial motion—to whether evidence of Denny's communication with Osborn should be admitted. The State argued that testimony regarding any concealment by a defendant may be taken into consideration by the jury when determining whether the defendant is guilty of the offense charged, citing *State v. Moore*, 254 Mont. 241, 836 P.2d 604 (1992). The State maintained that "by indicating to Mr. Osborn that he wants [Osborn] to keep his lips shut," Denny effectively attempted to conceal Osborn's testimony. The State argued that the jury should be able to consider such evidence. Defense counsel did not object to the relevance of Osborn's testimony but reiterated the need for a mistrial due to the jury now knowing Denny's status as an inmate. He argued such evidence was highly prejudicial and agreed that a cautionary instruction would not only not remedy the situation but would make matters worse.

¶21 The District Court acknowledged that Denny's status as an inmate was prejudicial but found the concealment evidence admissible. The court noted, under *Moore*, that concealment evidence, like flight evidence, is admissible because it can tend to establish consciousness of guilt. The Court further found that:

> [Denny] didn't have to engage in a visual exchange with Mr. Osborn. He could have kept his head down. He could have walked by. He's an intelligent man. When he testified on the stand, it's clear to me he's a lucid thinking individual. He is an intelligent man represented by counsel. He knows he's in a felony trial. And it would have been readily clear to him not to have contact with another witness in this case.

The court concluded that by "voluntarily engaging in that communication with Mr. Osborn, Mr. Denny is the one that's put us in this situation." Therefore, the District Court concluded that the evidence, although prejudicial, was more probative, and denied the motion for mistrial. The court recognized there were colorable arguments on each side but determined the jury would inevitably know that the communication happened at the jail, if nothing else, by the video itself. The court determined that Denny's own conduct put his inmate status at issue, that Denny made his communications in jail relevant, and that he brought any resulting prejudice upon himself. We agree. Osborn's testimony regarding Denny's attempted concealment, though somewhat prejudicial, cannot reasonably be grounds for mistrial when Denny himself put such evidence at issue. We conclude that Osborn's reference to "jail" did not rise to a manifest necessity to exercise the extreme remedy of a mistrial where Denny made his communications in jail relevant and brought any resulting prejudice upon himself. The District Court did not abuse its discretion when it denied Denny's first motion for mistrial.

¶22 Denny argues on appeal that the District Court erred by not giving a curative instruction. We first observe that Denny did not request a curative instruction. However, we, as the District Court did, conclude that a curative instruction would have done very little to remedy any prejudice to Denny. As the District Court noted, there was no way to sanitize that fact out of the equation, and a curative instruction only would have drawn further attention to Denny's status as an inmate. We conclude the District Court did not abuse its discretion by refusing to give the jury a curative instruction.

12

¶23 Denny made his second motion for mistrial after Detective Mahlum characterized the audio recording as a "jail visitation." The District Court excused the jury and heard argument from both parties. Denny argued the reference to jail was prejudicial because it, again, drew the jury's attention to Denny's status as an inmate. He argued the statement alone was sufficient to warrant a mistrial but it was also cumulative error when considering his first motion for mistrial. The court denied the motion, reasoning that the reference was harmless because the jury already knew that Denny had been in jail. The court instructed Detective Mahlum to refer to the call as "a recording" for the remainder of his testimony.

¶24 Where individual errors alone are insufficient to warrant reversal, the sum of those errors can nevertheless serve as a basis for reversal under the cumulative error doctrine. *State v. Ellerbee*, 2019 MT 37, ¶ 41, 394 Mont. 289, 434 P.3d 910. "The cumulative error doctrine requires reversal where numerous errors, when taken together, have prejudiced a defendant's right to a fair trial." *Ellerbee*, ¶ 41. When determining whether a prohibited statement contributed to a conviction, a court must review the prejudicial influence of the inadmissible evidence together with the strength of the evidence against the defendant and whether a cautionary jury instruction could cure any prejudice. *Long*, ¶ 24.

¶25 We conclude that Detective Mahlum's characterization of the audio recording as a "jail visitation call" was not, by itself or cumulatively, prejudicial. This Court has recognized that "most prospective jurors are aware that a defendant charged with a crime may have spent some time in jail." *Gunderson*, ¶ 94. That fact alone is not unduly prejudicial to a defendant and, in this case, the record does not reflect a level of prejudice

13

that warrants a mistrial. Two isolated references to "jail," apart from the foregoing analysis, do not amount to the same prejudicial effect as a jury seeing a defendant in shackles, restraints, or prison clothes, and it cannot be said that these two references, in the totality of the evidence, so impacted the jury's deliberations that it influenced every question submitted to the jury. The District Court was in the best position to determine whether the admission of the evidence prejudicially impacted Denny's right to a fair trial. Absent the two references to "jail" Denny is disputing on appeal, the record was sufficient to establish Denny's guilt, and we do not conclude there was a reasonable possibility that the two references prejudiced the jury and deprived Denny of a fair trial. We again note that a curative instruction would have drawn further attention to Denny's inmate status, which was the very fact Denny argues on appeal the jury should not have heard. The District Court did not abuse its discretion by denying both motions for mistrial.

¶26    *2. Did the District Court properly refuse Denny's proposed jury instruction for unauthorized use of a motor vehicle as a lesser-included offense of theft by possession of stolen property?*

¶27    A criminal defendant is entitled to a jury instruction on a lesser-included offense if based on the evidence, the jury could find the defendant guilty of the lesser, rather than the greater, offense. *State v. Martinosky*, 1999 MT 122, ¶ 18, 294 Mont. 427, 982 P.2d 440 (citing § 46-16-607(2), MCA). This rule helps avoid "the situation where the jury, convinced that the defendant is guilty of some crime, although not necessarily the crime charged, convicts the defendant rather than let his action go unpunished simply because the only alternative was acquittal." *State v. Castle*, 285 Mont. 363, 367, 948 P.2d 688,

14

690 (1997) (citing *State v. Gopher*, 194 Mont. 227, 231, 633 P.2d 1195, 1197-98 (1981)). To determine whether a district court was obligated to give a proposed lesser-included offense instruction at trial, we apply a two-step approach articulated in *Castle*, 285 Mont. at 368, 948 P.2d at 690-91. *State v. Jay*, 2013 MT 79, ¶ 39, 369 Mont. 332, 298 P.3d 396. First, we determine whether the offense, as a matter of law, constitutes a lesser-included offense of the offense charged. *Jay*, ¶ 39. If it does, we then determine whether there was sufficient evidence to support the lesser-included offense instruction. *Jay*, ¶ 39. If both criteria are met, then the District Court must give the proposed instruction. *Jay*, ¶ 42 (citing § 46-16-607(2), MCA; *Castle*, 285 Mont. at 369, 948 P.2d at 691).

¶28 Denny argues on appeal that the District Court erred in denying Denny's request for a lesser-included offense jury instruction on unauthorized use of a motor vehicle. Denny argues that unauthorized use of a motor vehicle does not require any additional facts to those required for theft by possession of stolen property and maintains that the evidence at trial could have supported a conviction of unauthorized use of a motor vehicle instead of theft by possession of stolen property. We turn first to determining whether unauthorized use of a motor vehicle, as a matter of law, is a lesser-included offense of theft by possession of stolen property.

¶29 An "included offense" is statutorily defined as one that "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Section 46-1-202(9)(a), MCA. As § 46-1-202(9)(a), MCA, does not, by its

15

terms, define a "lesser" included offense, we have applied the test articulated in *Blockburger v. United States*, 284 U.S. 299 (1932), to determine whether an offense is a lesser-included offense. *State v. Smith*, 276 Mont. 434, 443, 916 P.2d 773, 778 (1996). "In the context of a defendant's entitlement to jury instructions on an alleged lesser-included offense, we have characterized the *Blockburger* test as stating that "separate distinct offenses require proof of additional facts, where lesser-included offenses do not." *State v. Long*, 223 Mont. 502, 510, 726 P.2d 1364, 1369 (1986) (*rev'd in part on other grounds*). "The term 'facts,' as used in the statute [and our case law], refers to the statutory elements of the offense and not the individual facts of each case." *Smith*, 276 Mont. at 443, 916 P.2d at 778. In other words, a lesser-included offense is one that is established by proof of the same or less than all the elements required to establish the commission of the offense charged. Here, we must determine whether the elements of unauthorized use of a motor vehicle are *the same or less than* the elements required to establish theft by possession of stolen property, or conversely, whether it requires proof of additional elements.

¶30    Pursuant to § 45-6-301(3)(c), MCA, theft by possession of stolen property requires proof that a person:

    (1) purposely or knowingly

    (2) obtains control over

    (3) stolen property,

    (4) knowing the property to have been stolen by another,

16

(5) uses, conceals, or abandons the property, and

(6) knowing that the use, concealment, or abandonment probably will deprive the owner of the property.

In contrast, unauthorized use of a motor vehicle requires that a person:

(1) knowingly

(2) operates

(3) the automobile [or other motor vehicle] of another

(4) without the other's consent.

Section 45-6-308(1), MCA.

¶31 Considering the statutory elements of the two offenses at issue, the District Court concluded that they were separate, distinct offenses. Specifically, the court noted that unauthorized use of a motor vehicle requires at least one element that theft by possession of stolen property does not—namely that the subject property must be a vehicle. However, there is nothing in the felony theft statute that would preclude a prosecution for being in possession of a stolen automobile. Accordingly, although the subject property in an unauthorized use of a motor vehicle prosecution *must* be an automobile, the subject property in a prosecution for theft by possession of stolen property *could* also be an automobile. As the subject property could be the same for both offenses, we reject this distinction as a basis for concluding that unauthorized use of a motor vehicle is not a lesser-included offense of theft by possession of stolen property.

17

¶32 Denny was charged with theft by possession of stolen property under § 45-6-301(3)(c), MCA, (purposely or knowingly obtains controls over stolen property knowing the property to have been stolen by another) and not with theft by unauthorized use under § 45-6-301(1), MCA, (purposely or knowingly obtains or exerts unauthorized control over property of the owner). As will be significant in the discussion that follows, both statutes require a defendant to have the intent to deprive the owner of the property. During trial, the State acknowledged that if Denny been charged with theft by unauthorized use under § 45-6-301(1), MCA, then unauthorized use of a motor vehicle under § 45-6-308(1), MCA, arguably could be considered a lesser-included offense. Respecting the distinction between theft by unauthorized use and unauthorized use of a motor vehicle, the question of whether the latter is a lesser-included offense of the former turns on the element of intent. Theft by unauthorized use requires an intent to deprive the owner of the property, while unauthorized use of a motor vehicle requires only that it be "knowingly" and "without the other's consent." Many courts have held unauthorized use simply involves *the lack* of an intent to permanently deprive the owner of their property and, therefore, intent to permanently deprive and intent to temporarily deprive are simply different levels of the same element, thus making unauthorized use a lesser-included offense of theft. Other courts have held that intent to temporarily deprive and an intent to permanently deprive are separate elements and therefore establish separate and distinct offenses. We need not, however, answer that question in these proceedings because

18

Denny's charge was amended from theft by unauthorized use to theft by possession of stolen property.

¶33 The offense of theft by possession of stolen property requires that the subject property be "stolen"; that is, "property over which control has been obtained by theft." Section 45-2-101(72), MCA. It also requires that a defendant have the intent to deprive the owner of their property. Section 45-6-301(3)(c), MCA, ("knowing that the use, concealment, or abandonment probably will deprive the owner of the property."). Unauthorized use of a motor vehicle does not have an element requiring the automobile be obtained by theft nor does it require an intent to deprive the owner. Rather, the automobile must be "operate[d]" "without the other's consent."

¶34 It is clear from the comparison of theft by possession of stolen property and unauthorized use of an automobile that these are distinct offenses, each of which requires proof of at least one "fact" that the other does not. While both offenses are premised upon one person obtaining control over property of another, the status of the property— i.e., whether it is stolen at the time the defendant took control of the property—is different respecting each offense. Substantial overlap in proof to establish the elements of each offense does not make unauthorized use a lesser-include offense of theft by possession of stolen property. *See Smith*, 276 Mont. at 444, 916 P.2d at 779. We conclude that unauthorized use of a motor vehicle is not a lesser-included offense of theft by possession of stolen property.

¶35   We need only reach the secondary question of whether evidence supported Denny's proposed instruction regarding unauthorized use of a motor vehicle if we determine that the offense is a lesser-included offense of theft by possession of stolen property. *See Smith*, 276 Mont. at 444-45, 916 P.2d at 779. As it is not a lesser-included offense under the above analysis, no amount of evidence could have entitled Denny to an instruction on the offense of unauthorized use of a motor vehicle. *Smith*, 276 Mont. at 445, 916 P.2d at 779. We hold that the District Court did not abuse its discretion when it refused Denny's proposed instruction of unauthorized use of a motor vehicle.

¶36   *3. Was Denny denied effective assistance of counsel?*

¶37   We have adopted the two-part test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), to determine whether counsel was ineffective. *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861. "[A] defendant must prove (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defense." *Whitlow*, ¶ 10. To prevail on an IAC claim, the defendant must satisfy both prongs of the test. With respect to the first prong, "a reviewing court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' and the defendant 'must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Whitlow*, ¶ 15 (quoting *Strickland*, 466 U.S. at 689). We will address an IAC claim on direct appeal if the reason for counsel's action, or inaction, is apparent from the record on appeal. *State v. Ward*, 2020 MT 36, ¶ 20, 399

20

Mont. 16, 457 P.3d 955. "If it is not apparent from the record why counsel took a particular course of action, IAC claims may be more appropriate for review in a petition for postconviction relief." *Ward*, ¶ 18. "Claims that involve alleged omissions of trial counsel are usually not well-suited for consideration on direct appeal." *Ward*, ¶ 18. However, if there is no legitimate reason for counsel's actions or inactions, then this Court will consider the IAC claim on direct appeal. *State v. Kougl*, 2004 MT 243, ¶ 15, 323 Mont. 6, 97 P.3d 1095.

¶38 Denny agues he received ineffective assistance when his trial attorney failed to object, and ultimately stipulated, to the State introducing evidence that he had traded methamphetamine and heroin for the stolen license plate. Denny argues his IAC claim is appropriate for review on direct appeal because there is no plausible justification for his counsel's failure to object to such testimony; that the testimony likely had the effect of prejudicing the jury; and that evidence of drug use is, by its very nature, prejudicial. Denny maintains his attorney was deficient for stipulating to such "highly prejudicial" evidence and there was a reasonable probability that but for counsel's error, Denny would have been found not guilty on some or all of the offenses of which he was convicted.

¶39 Denny argues that for evidence to be admissible under the transaction rule, evidence must be "explanatory of the charged offense" and not explanatory of some other fact of the case. *State v. Derbyshire*, 2009 MT 27, ¶ 36, 349 Mont. 114, 201 P.3d 811. He notes that in *Derbyshire*, ¶ 40, "this Court astutely observed: 'it appears that the prosecution simply wanted the jury to know that Derbyshire was on state and federal probation when he

21

committed the charged offense.'" This argument suggests that the State introduced the evidence that Gregory traded methamphetamine and heroin for a stolen plate solely for its prejudicial value—that Denny was dealing drugs. Denny argues the evidence at issue was unnecessary to the State's case. However, our review of the record indicates otherwise. As the State pointed out to the District Court, people generally go to the Department of Motor Vehicles to buy their license plates, thus the evidence was admissible transaction evidence because the evidence proved Denny's knowledge that the license plate was in fact stolen. Denny's purchase of the stolen plate in exchange for drugs "was central to the jury's understanding of what transpired and therefore highly probative." *State v. Michelotti*, 2018 MT 158, ¶ 14, 392 Mont. 33, 420 P.3d 1020. The State clearly offered the evidence for more than its prejudicial value. Denny further argues that, in a general sense, evidence of drug use is prejudicial, but he has not argued that the evidence was irrelevant or inadmissible under the transaction rule. While drug evidence, without more, may not be admissible, it will be in cases like Denny's where there is evidence establishing the necessary "probative linkage" between the crime and the "use" of drugs under the transaction rule. *State v. Buck*, 2006 MT 81, ¶ 81, 331 Mont. 517, 134 P.3d 53.

¶40 While we make no conclusions as to why Denny's trial counsel stipulated to the evidence, we reject Denny's theory on appeal that no plausible justification existed for trial counsel's failure to object to such evidence. The evidence was admissible transaction evidence because the evidence proved Denny's knowledge that the license plate was stolen.

22

Its admissibility created clear justification for stipulating to the evidence, thus counsel's failure to object could have been based on strategy.

¶41 The record here does not explicitly answer the question "why" counsel stipulated to the evidence. After the State made its offer of proof regarding the testimony, the District Court asked Denny's counsel if he would like to be heard on the matter, to which counsel responded, no. The court issued its ruling on the record, finding that the proposed evidence "would constitute, or could constitute, admissible transactional evidence." The court clarified for the record that Denny was not objecting to admission of the evidence. Ultimately, we can only speculate as to why Denny's attorney made the decision to stipulate to the evidence, and this is precisely why Denny's IAC claim is not susceptible to review on direct appeal. We therefore decline to review the issue and conclude that Denny's IAC claims would be more appropriately addressed through a petition for postconviction relief.

## CONCLUSION

¶42 The District Court properly and within its discretion denied Denny's motions for mistrial based on two statements that Denny contacted Osborn in "jail" and that Detective Mahlum identified an exhibit as a "jail visitation call." Denny was not entitled to a jury instruction on unauthorized use of a motor vehicle as a lesser-included offense of the charged theft by possession of stolen property as both offenses required proof of an additional element. Finally, it is not apparent from the record why Denny's counsel did

23

not object to the State's evidence, and we hold that his IAC claim would be more appropriately resolved through a petition for postconviction relief.

¶43 Affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE